UNITED STATES, Appellee

v

JOHN T. McALLISTER, Jr., Sergeant,
U. S. Air Force, Appellant

19 USCMA 420, 42 CMR 22

*Lieutenant Colonel Norman L. Paul* argued the cause for Appellant, Accused. With him on the brief was *Colonel Bertram Jacobson.*

*Major Robert L. Bates* argued the cause for Appellee, United States. With him on the brief was *Colonel James M. Bumgarner.*

## Opinion

QUINN, Chief Judge:

Charged with two acts of misconduct, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and with a violation of a general regulation establishing off-limit areas, the accused pleaded guilty to the former and not guilty to the latter before a special court-martial convened at Osan Air Base, Korea. Military reviewing authorities have affirmed the findings of guilty and the sentence. We granted review to consider the correctness of the proceedings by which the findings of guilty were determined at trial.

It appears that after more than a half hour of closed session deliberation on the findings, the court-martial reopened. The president indicated that the court had voted, but there had been "an abstention" by one member with the result that an insufficient number of votes had been cast "for a finding of guilty." A lengthy colloquy ensued as to the effect of the vote. Defense counsel contended it amounted to a vote of not guilty, whereas trial counsel maintained that the vote was irregular because every member was obligated to vote. Trial counsel further contended that the members could properly reballot on the findings. Thereupon, using a model form of Air Force instructions tendered by trial counsel, the president instructed the members on the procedure for reballoting. In material part, he indicated that any member could " 'request . . . an additional ballot' "; if such request was made, the members would " 'vote orally on the request' " and a decision would result on the concurrence of a majority. The court closed again for deliberation, but reopened after a nine-minute interval. Once more, the president instructed the members on the procedure for reballoting. The court closed and again it opened after a few minutes. Further instructions were requested as to the contents of the off-limits regulation. The court then closed for a fourth time. When it reopened, the president announced, in the usual form, that on concurrence of two-thirds of the members, the court had found the accused guilty of all specifications and charges.

In his brief, the accused concedes that the president of the court "probably did not intend to announce any decision" as to his guilt or innocence at the time he announced that one of the members had unexpectedly abstained from voting. Although the concession is amply supported by the discussion, the accused contends that the president's reference to the result of the vote was tantamount to an "announcement in open court" that the accused had been "acquitted of all charges and specifications."

**421**

Two circumstances militate against the accused's ultimate conclusion that he had been acquitted of ▓▓▓▓▓▓▓▓ ▉ all charges. First, his plea of guilty to the two offenses alleged under Charge I removed "from the triers of fact any question of guilt or innocence," and left "only the requirement of imposing an appropriate sentence." United States v Trotter, 15 USCMA 218, 219–220, 35 CMR 190 (1965). It strains logic and credulity to the breaking point to construe the president's statement of the vote as an announcement that the court members had finally determined to acquit the accused of the two offenses to which he had pleaded guilty. See United States v London, 4 USCMA 90, 95, 15 CMR 90 (1954). Secondly, before the court-martial retired into closed session, the members had been instructed that a "possibility of reballoting" might arise. They were advised that if the possibility did arise, they should "request additional instructions on that procedure in open court." The remarks at the reopening of the court, which are set out in the footnote below,[1] clearly indicate that the members did not regard the vote as a final vote, and reconvened in open session only to obtain instructions on further balloting. Thus, the present situation is unlike that in United States v Boswell, 8 USCMA 145, 149, 23 CMR 369 (1957), where the president formally announced, in the usual form, "the true findings reached by the court-martial in its deliberations on the accused's guilt or innocence." It is, however, substantially similar to United States v Nash, 5 USCMA 550, 552, 554, 18 CMR 174 (1955). There, as here, the court reconvened after an initial vote on the findings to obtain clarification of the procedure for reballoting. Although we held in Nash that the instructions as to reballoting were erroneous, we did not regard the president's disclosure of the vote as announcement of a finding of not guilty. We conclude that the president's statement was not an announcement of findings of not guilty, and consequently further balloting by the court was proper. United States v London, supra; see also United States v Downs, 4 USCMA 8, 12, 15 CMR 8 (1954).

Left for consideration is the correctness of the instructions as to reballoting. The trial was held ▓▓▓▓▓▓ ▉ in May 1969. On January 1, 1969, a new Manual for Courts-Martial became operative. The Manual procedure for reballoting requires that on a reballot the vote be "on secret written ballot." Manual for Courts-Martial, United States, 1969, paragraph 74$d$(3). Thus, the instruction that the members could "vote orally" was contrary to the Manual requirement.

It is well settled that not every departure from established trial procedure constitutes reversible error. United States v Trotter, supra, page 219. We have held that the failure of the court-martial to follow the prescribed voting procedure to reach a determination affecting a substantial right of the accused carries a presumption of prejudice. United States v Johnson, 18 USCMA 436, 40 CMR

---

[1] "TC: . . . I believe the President of the Court has indicated there is a question which has come up, and if you will, sir, pose the question specifically.

"PRES: Yes. We have had the vote and we had an abstention, which didn't provide us with the four members for a finding of guilty.

"TC: Does your question relate to whether or not any member of the court may properly abstain from voting on findings?

"DC: I'd like to interject one question first, if I might, to the President.

"TC: Let me clear this up first. Does the question relate to abstention or non-abstention?

"PRES: We have read here that voting is obligatory.

"TC: That's right.

"PRES: And it has occurred, its unintentional, I'm sure, that one of the members abstained."

148 (1969). The presumption, however, may yield to compelling evidence in the record that no harm actually resulted. United States v Pierce, 19 USCMA 225, 41 CMR 225 (1970). Here, the accused's plea of guilty to the specifications of Charge I made it "unthinkable . . . [that] the court-martial would have returned a finding at variance with the plea." United States v Cruz, 10 USCMA 458, 460, 28 CMR 24 (1959). But, as to Charge II, the adverse consequence of the reballot is apparent in the court-martial's findings of guilty; and we have no way of knowing whether the result would have been the same if the vote to reballot had been by "secret written ballot," as required by the Manual. The findings of guilty of this charge must, therefore, be set aside.

The decision of the United States Air Force Court of Military Review, as to Charge II, is reversed. The findings of guilty of Charge II are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to the Court of Military Review. In its discretion, the Court of Military Review may reassess a sentence, which does not include a punitive discharge, on the basis of the findings of guilty of Charge I, or it may direct a rehearing on Charge II and the sentence. See United States v Voorhees, 4 USCMA 509, 16 CMR 83 (1954).

Judge FERGUSON concurs in the result.

DARDEN, Judge (concurring in part and dissenting in part):

I am at a loss to understand how the president of the court-martial reopened the court with a statement that he believed an abstention was unintentional when he could have determined this question before the court was reopened. Since the Manual for Courts-Martial, United States, 1969, provides that voting is obligatory,[1] I concur in the decision that there could not have been a formal announcement of the findings until after all members had voted.

Paragraph 74d(3) of the Manual[2] provides for reballoting. My understanding of this paragraph is that it applies only after every member has balloted and before the finding is formally announced in open session. This procedure is in contemplation of a changed vote on reballoting instead of a compliance with the requirement that every member vote. My view is that this paragraph does not apply in cases where the first ballot was incomplete. Accordingly, trial counsel acted erroneously when he gave an instruction on reballoting. An "oral vote" on an erroneous and unnecessary procedure is not prejudicial to the accused.

I would affirm the decision of the Court of Military Review.

---

[1] "(2) *Voting.* Voting shall be by secret written ballot (Art. 51(a)) and is obligatory. The order in which the several charges and specifications are to be voted upon will ordinarily be determined by the president, subject to the objection of a majority of the court, except that all the specifications under a charge shall precede that charge. The members normally vote upon a specification or charge by marking on their ballots: 'Guilty;' 'Not guilty;' or 'Not guilty, but guilty of ————.' The junior member of the court shall count the votes. The count shall be checked by the president, who shall forthwith announce the result of the ballot to the members of the court (Art. 51(a))." Paragraph 74d(2),

Manual for Courts-Martial, United States, 1969.

[2] ". . . The court may also reconsider any finding of guilty on its own motion at any time before it has first announced the sentence in the case. Any member of a court may propose that a finding be reconsidered. If a reballot is proposed by any member as to a finding of guilty of an offense for which the death penalty is mandatory by law, an additional ballot shall be taken immediately. Otherwise, the question shall be determined on secret written ballot, and a reballot shall be taken on a prior not guilty finding when a majority of the members vote in favor thereof or on a prior guilty finding if more than one-third of the members favor reballoting."