**UNITED STATES, Appellee,**

v.

**Aaron L. WILSON, Private First Class, U.S. Army, Appellant.**

**No. 40,341.**

**CM 439759.**

U.S. Court of Military Appeals.

July 16, 1984.

For Appellant: *Captain Joseph A. Russelburg* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Jerome E. Kelly, Captain Judson W. Roberts, Captain Courtney B. Wheeler* (on brief); *Captain David M. England.*

For Appellee: *Captain Richard P. Laverdure* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Captain Robert D. Higginbotham* (on brief); *Major John T. Meixell*.

## Opinion of the Court

EVERETT, Chief Judge:

Appellant was tried at Fort Polk, Louisiana, by a general court-martial composed of officers and enlisted members; and contrary to his pleas, he was convicted of burglary and assault with intent to commit rape, in violation of Articles 129 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 929, and 934, respectively. The court-martial sentenced Wilson to a bad-conduct discharge, confinement at hard labor for 5 years, and total forfeitures. The convening authority approved the findings and sentence; and the United States Army Court of Military Review affirmed without opinion. Appellant's petition for review was granted on this issue:

THE MILITARY JUDGE ERRED BY INSTRUCTING THE COURT IMPROPERLY ON THE PROCEDURES TO BE USED IN DETERMINING WHETHER TO RECONSIDER THE APPELLANT'S SENTENCE AND IN THE PROCEDURE TO ARRIVE AT A NEW SENTENCE IF RECONSIDERATION WAS AGREED UPON.

### I

Near the end of his sentencing instructions, the military judge advised the court members: [1]

Now the court may reconsider sentence either with a view to increasing the punishment or decreasing the punishment at anytime before it is formally announced in open court. I'm not going to give you instructions on that now. If any court member wishes reconsideration of sentence, when you come back into court the president, instead of announcing sentence, will ask for such instructions without indicating which court

member desires reconsideration and without indicating whether it's with a view to increasing or decreasing the punishment.

Shortly thereafter the court closed to deliberate on sentence. Then later it reopened and the president announced the court's request that "the military judge instruct us on procedures on a re-vote." These proceedings then ensued:

MJ: Okay. If there is a request for a reconsideration the question of whether to reconsider sentence is itself determined by secret written ballot. And a reconsideration of the sentence with a view to increasing it will be taken only if a majority of the members vote in favor thereof. In other words, if it's proposed to increase the sentence—reconsider it with a view to increasing it—then if four court members are in favor thereof then you reconsider and re-vote on the sentence.

Now a reballot on the sentence and reconsideration of the sentence with a view to decreasing it will be taken if the vote indicates that reconsideration is not opposed by the number of votes required for the sentence that was previously agreed upon.

PRES: Would you word that again?

MJ: Okay. If a member of the court requests reconsideration with a view to decreasing the sentence the matter has to be determined by a secret written ballot. And then reconsideration and re-voting on the sentence will occur if that ballot shows that reconsideration is not opposed by the number of votes required for the sentence previously agreed upon. In other words, if the sentence that was agreed upon required five members of the court to concur and it's proposed to reconsider with a view to decreasing the sentence, and you vote and the members are told everybody in favor of reconsidering will indicate yes—those opposed no. All right, if you have three votes in favor of reconsideration, then you

---

1. There were 4 officers and 3 enlisted members.

must reconsider. That's with a view to decreasing. Now if the sentence adjudged required a three-quarters vote and it is proposed to reconsider that sentence with a view to decreasing it—when you vote on the question of whether to reconsider or not, if two court members are in favor of reconsideration with a view to decreasing it, then you must reconsider it and re-vote with a view to decreasing it.

Now the fact that you—the vote for reconsideration, either to decrease or increase the sentence, is carried does not—what it does in effect is to set aside the sentence that's been agreed upon and you can then vote either with a view to increasing or decreasing as the suggestion and ballot requires. So it's possible you could come back then and reconsider the—if you don't get agreement on increase or decrease as proposed by some court member, then you should vote again to make sure that the number of court members in favor of the sentence—concurring in the sentence does match the required number.

Let me ask you, do you have a question at this point about the instructions and what the procedure is?

(Negative response by all court members.)

MJ: Okay. At this time court will again be closed for deliberation on sentence. Court is closed.

Only six minutes after the court closed, it reopened to announce the sentence. Our task now is to determine whether the instructions on reconsideration tainted that sentence with prejudicial error.

## II

The Uniform Code, as originally enacted, contained no provision that dealt specifically with the number of votes required for reconsideration of findings or sentence. However, the 1951 Manual for Courts-Martial, in discussing the procedure for findings by a court-martial, stated that "a court may reconsider any finding before the same is formally announced in open court. The court may also reconsider any finding of guilty on its own motion at any time before it has first announced the sentence in the case." *See* para. 74 *d* (3), Manual for Courts-Martial, United States, 1951; *see also* para. 78 *d*, Manual for Courts-Martial, U.S. Army, 1949. With respect to announcing sentence, the 1951 Manual stated: [2]

If the law officer of a general court-martial notes any ambiguity or apparent illegality in the sentence as announced by the court, he should bring the irregularity to the attention of the court so that it may close to reconsider and correct the sentence. The court may not, however, reconsider the sentence with a view to increasing its severity after the sentence has been announced unless the sentence prescribed for the offense of which the accused has been convicted is mandatory. . . .

Within the limitations prescribed in this paragraph, the court may reconsider a sentence on its own motion at any time before the record of trial has been authenticated and transmitted to the convening authority.

In *United States v. Nash*, 5 U.S.C.M.A. 550, 18 C.M.R. 174 (1955), the Court considered whether the law officer had erred "in instructing the court that reballoting on the findings was within the prerogative and discretion of the president." As the Court observed, the Uniform Code was silent as to reballoting; and so there was no "conflict between that act and the provisions of" paragraph 74 *d* (3) of the Manual, which provided "good authority for the casting of more than one ballot." According to the Court:

The procedure outlined by the Manual is the only one consistent with a proper and careful consideration of guilt or innocence. An accused's life or liberty should not be taken without a full and fair opportunity on the part of all court-martial members to exchange their

2. Para. 76 *c*.

points of view and to persuade others to join them in their beliefs. If an accused interposes any sort of valid defense, as he did in this case, there is apt to be some difference of opinion as to wherein the truth ultimately lies. That is historically true of juries in the civilian courts and, while with them it is generally required that the vote be unanimous, either for conviction or acquittal, it is not unusual for a number of ballots to be cast before a verdict is finally reached. In addition, it is not unusual for the complexion of the voting to change as the respective ballots are taken. Although unanimity is not required under our system, there still exist many valid reasons for allowing the casting of more than one ballot. Without enumerating any, we may state generally that they relate to the desirability of having the theories for both the prosecution and defense weighed and debated thoroughly before final judgment, for it cannot be disputed that justice is more likely to be administered if full and free discussions are not automatically cut off just because a vote has been recorded. Since the Manual language is consistent with good civilian and military practice, and since it announces principles which underlie a fair and just trial, we support it and, therefore, find no fault with the law officer's instructions on that point.

*Id.* at 553, 18 C.M.R. at 177.

The Court concluded, however, that the decision whether to reconsider should not be made by the president of the court, since "[t]o allow him to be the sole judge as to the number of ballots to be taken would run counter to" the policy of the Code and Manual provisions "intended to prevent the senior member of the court-martial from exercising any undue influence on the findings or sentence of the Court." *Id.* at 554, 18 C.M.R. at 178. Instead, whether to reconsider a finding before its announcement in open court is to be decided by a majority vote of the members, because "[a]fter establishing in subparagraphs (a) and (b) the voting requirements for conviction and sentencing, Article 52 of the Code, 50 U.S.C. § 627, provides in subparagraph (c) that all other questions to be decided by the members of a general or special court-martial shall be determined by a majority vote." *Id.*

In his concurring opinion, Judge Brosman pointed to a possible conflict between allowing a majority vote on reconsideration and the requirement under Article 52 of the Code, 10 U.S.C. § 852, that there be "a two-thirds—or an even greater—vote of the members of a military court to convict or to impose sentence." As he explained:

[I]f a simple majority may lawfully compel revote after revote, it is manifest that the difference between the two provisions narrows. Indeed, the danger threatened is akin to that presented by the instant case through permitting the president to force a series of reballots. It must be apparent that protracted revoting may, as a practical matter, frequently serve to defeat the Congressional intent that a two-thirds—or, in specified instances, a greater—majority be secured to support findings of guilty or a sentence determined by the court-martial.

*Id.* at 556, 18 C.M.R. at 180.

"The only solution" which occurred to Judge Brosman was this:

Under its terms, *any* member of a court-martial may propose reconsideration. The reconsideration itself, however, must be determined by the concurrence of a sufficient number of members to require the adoption of a conclusion different from that originally approved by the court. This would mean—if there had previously been a vote to acquit—that a revote may not be compelled in the absence of agreement of two-thirds of the court's membership. If the offense carries a mandatory death penalty, then it would be demanded that every member concur in the proposal to reconsider. Cf. Article 52(a)(1). Similarly, if the prior vote had been to convict, then—save in the instances covered by Article 52(a)(1) —more than a one-third vote would be

208

needed for a reballot. Like rules would obtain as to sentencing procedures—the vote necessary for reconsideration being dependent on that demanded under Article 52 for the sentence first agreed on. *Id.* at 556–57, 18 C.M.R. at 180–81.

In their Joint Report for calendar year 1963, the Judges of the Court of Military Appeals, the Judge Advocates General, and the General Counsel of the Department of the Treasury—sitting as a Committee pursuant to Article 67(g) of the Uniform Code, 10 U.S.C. § 867(g)—recommended that Congress enact a bill that would make a number of procedural changes in trials by court-martial. *See* Joint Report of the United States Court of Military Appeals, and the Judge Advocates General of the Armed Forces and the General Counsel of the Department of the Treasury [hereafter cited as 1963 Joint Report] 3, 15–25 (Jan. 1—Dec. 31, 1963), printed in The Annual Report of the United States Court of Military Appeals and the Judge Advocates General of the Armed Forces and the General Counsel of the Department of the Treasury. Pursuant to the Uniform Code of Military Justice for the Period January 1, 1963, to December 31, 1963. Among other things, this bill would have amended the first sentence of Article 52(c) of the Code, 10 U.S.C. § 852(c) by adding these words:

> [B]ut a determination to reconsider a finding of guilty or, with a view toward decreasing it, a sentence may be made by any lesser vote which indicates that the reconsideration is not opposed by the number of votes required for that finding or sentence.

*Id.* at 25.

The sectional analysis explained:

> Article ... [would be] further amended by adding to subsection (c) a provision whereby the members of the court may determine to reconsider a finding of guilty or, with a view to decreasing it, a sentence upon any vote which indicates that reconsideration is not opposed by the number of votes required for that finding or sentence. This amendment is

consistent with justice and fair procedure, for such a vote would indicate that at least one of the members who had voted for the finding or sentence now desires to reconsider the matter. A reconsideration of a finding of guilty of a lesser included offense with a view to arriving at a finding of guilty of a greater offense is actually a reconsideration of a finding of not guilty, and accordingly a majority vote is required before such a reconsideration can be undertaken. This amendment is not intended to have any effect upon the time within which a finding or sentence may be reconsidered, this being part of the rule making power of the President under article 36 (see paragraphs 74*d* (3) and 76*c* of the Manual for Courts-Martial for rules now in effect). *Id.* at 33.

When the Manual for Courts-Martial, United States, 1969, was promulgated by President Johnson, paragraph 74 *d* (3) of the 1951 Manual was amended by the addition of these two sentences about reconsideration of findings:

> If a reballot is proposed by any member as to a finding of guilty of an offense for which the death penalty is mandatory by law, an additional ballot shall be taken immediately. Otherwise, the question shall be determined on secret written ballot, and a reballot shall be taken on a prior not guilty finding when a majority of the members vote in favor thereof or on a prior guilty finding if more than one-third of the members favor reballoting.

The corresponding explanation and analysis of the Manual stated:

> Two sentences were added at the end of this subparagraph which indicate the proper method for reconsideration of a finding. The rule laid down as to the number of votes required is patterned after Judge Brosman's concurring opinion in *United States v. Nash*, 5 U.S.C.M.A. 550, 18 C.M.R. 174 (1955). It is doubtful if the principal opinion correctly states the law today, and the rule as now stated in the Manual should be the legally correct

law when fairness to the accused is considered. Additionally, the judges of the Court of Military Appeals have concurred in proposed legislation to amend Article 52(c) which provides for the same rule as to the percentage of votes required for reconsidering a prior guilty finding. See H.R. 273, 89th Cong., 1st session, § 852 (1965).

Draft Analysis of Contents, Manual for Courts-Martial, United States, 1968 [hereafter cited as 1968 Analysis].

The 1969 Manual also added a new subparagraph—76 *d*—which discussed "Procedure for reconsideration" in these terms:

Subject to the rules provided in *c* above, any member of the court may propose that a sentence be reconsidered. The question shall be determined by secret written ballot, and a reballot on the sentence with a view to increasing it will be taken only if a majority of the members present vote in favor thereof; but a reballot on the sentence with a view to decreasing it will be taken if the vote therefor indicates that reconsideration *is not opposed* by the number of votes required for the sentence that was previously agreed upon.

The explanation in the analysis is:

This is a new subparagraph which provides a voting procedure for reconsideration of a sentence. Paragraph 76*c* has always discussed reconsideration but has not specified a procedure therefor. Consistent with providing an equitable procedure for reconsideration of findings in 74 *d* (3), it was considered desirable to include a specific procedure for sentence reconsideration. The procedure now provided in this subparagraph was modeled after H.R. 273, 89th Cong., 1st session, § 852 (1965). Of course, when reconsidering a sentence which is not mandatory but which is legal in part and illegal in part, the maximum sentence that may be adjudged is the legal portion of the original sentence. See *United States v. Nicholson*, [10 U.S.C.M.A. 186, 27 C.M.R. 260 (1959)]; *United States v. Long*, [4 U.S.C.M.A. 101, 15 C.M.R. 101 (1954)].

The Military Justice Act, Pub.L. No. 90–632, 82 Stat. 1335 (1968), amended Article 52(c) in the same manner that had been proposed by the Code Committee in its 1963 Joint Report, *supra*. Moreover, in explaining this change, the Report of the Senate Armed Services Committee, S.Rep. No. 1601, 90th Cong., 2d Sess. 12 (1968) U.S. Code Cong. & Admin.News 1968, p. 4501, used the very language of the sectional analysis contained in the 1963 Joint Report, *supra*.

Several months after the Military Justice Act of 1968 was enacted, President Nixon promulgated a Revised Edition of the 1969 Manual for Courts-Martial. This document contained the same provisions for reconsideration of findings and sentence that had been added by the original 1969 Manual. *See* para. 74 *d* (3) and 76 *d*, Manual for Courts-Martial, United States, 1969 (Revised edition).

The Manual provision on reconsideration of findings—paragraph 74 *d* (3)—was applied in *United States v. McAllister*, 19 U.S.C.M.A. 420, 42 C.M.R. 22 (1970), where the court-martial members had been instructed by the president of the special court-martial that they could vote orally on a request for an additional ballot on the findings. This instruction was held to constitute prejudicial error, because it violated the requirement of paragraph 74 *d* (3) for a secret written ballot. A similar instructional error led to reversal of findings of guilty in *United States v. Boland*, 20 U.S.C.M.A. 83, 42 C.M.R. 275 (1970).

### III

In light of this history of Code and Manual provisions as to reballoting, we must appraise appellant's claim that the judge's instructions were erroneous. This claim receives some support from the phrasing of the first sentence of Article 52(c), which in its present form reads:

All other questions to be decided by the members of a general or special court-martial shall be determined by a majority vote, *but a determination to reconsider a finding of guilty or to*

*reconsider a sentence, with a view toward decreasing it, may be made by any lesser vote which indicates that the reconsideration is not opposed by the number of votes required for that finding or sentence.*

(Emphasis supplied.) Inasmuch as the only specific references in Article 52(c) are to reconsideration of a finding of guilty or of a sentence with a view toward *decreasing* it, an argument can be made that, by negative implication, Congress precluded reconsideration of a finding of not guilty or of a sentence with a view toward *increasing* it. Adoption of this interpretation of Article 52(c) would also solve the problem that Judge Brosman mentioned in his concurring opinion in *Nash*, for—instead of being able to insist on repeated reconsiderations of a vote to acquit—a majority of the court members would be unable to obtain any reconsideration of such a vote.

However, the first sentence of Article 52(c) can also be construed in a manner which would allow reconsideration of a finding of not guilty or of a sentence with a view toward increasing it. Under this interpretation, such reconsiderations would be among the "other questions to be decided by the members of a general or special court-martial"—which "shall be determined by a majority vote." In *United States v. Nash, supra,* the Court considered this statutory language—which appeared in Article 52(c) of the Code as first enacted—to be applicable to requests for reballoting. Thus, this judicial construction would continue to govern except as specifically displaced by the provision added to Article 52(c) by the Military Justice Act of 1968.

Legislative history supports this view, for the Senate Report, No. 1601, *supra,* explaining the 1968 amendment to Article 52(c), makes clear that Congress intended to allow reconsideration by the court members of a finding of not guilty. According to the Report,

> [a] reconsideration of a finding of guilty of a lesser included offense with a view to arriving at a finding of guilty of a greater offense is actually a reconsidera-

tion of a finding of not guilty, *and accordingly a majority vote is required before such a reconsideration can be undertaken.*

S.Rep. No. 1601, *supra* at 12 (emphasis supplied).

In *Nash,* the Court had laudatory comments about the practice of allowing the court members to cast more than one ballot if they desired. These comments would seem to justify permitting reconsideration of findings of not guilty—not merely of guilty findings—and of low sentences, just as of high.

■    Without a clearer indication of legislative intent to the contrary, we conclude, therefore, that after Article 52(c) was amended in 1968, just as before, court-martial members may reconsider findings of guilty or not guilty and may reconsider a sentence with a view toward either increase or decrease thereof. A majority vote is required for reconsideration, except that a lesser vote suffices in the two situations which now are specified in Article 52(c).

■    Admittedly, this construction of Article 52(c) does not prevent the danger of coercion by an intransigent majority, to which Judge Brosman adverted in *Nash.* On this point, we can only say that the military judge may properly advise court members that repeated requests for reconsideration may not be used as a means of evading codal requirements for two-thirds, three-fourths, or unanimous votes on certain matters. *See* Article 52.

Appellate defense counsel have complained that the judge's instructions—and the Manual provisions on which they are based—violate the statutory requirement that all voting by the members on findings or sentence "shall be by secret written ballot." Article 51(a), 10 U.S.C. § 851(a). As they point out, the instructions contemplated that a member who requested a reballot would indicate whether he proposed revoting with a view to increasing or to decreasing the sentence. By so doing, the member would compromise the secrecy of his written ballot, since from his rebal-

loting proposal the other members could infer for what type of sentence he had voted.

■ Even if a member seeking a reballot must disclose to the other members whether he wishes to increase or decrease the sentence that has been voted, we find no violation of the Code. Under Article 52(c), a majority vote is required for reconsideration of a vote to increase the sentence, but a lesser number of votes is needed for reballoting on decrease of a sentence. If the person seeking a reballot on sentence does not disclose that he wishes reconsideration with a view towards decrease, reballoting would require a majority vote. Thus, unless this disclosure is made, an accused will not receive the benefit of the more lenient requirement that Article 52(c) now establishes for reconsidering a decrease in sentence. Thus, by reason of its differential voting requirements, Article 52(c) gives implicit approval for disclosure of the position of a court member who seeks a reballot. Accordingly, such disclosure should not be treated as a violation of Article 51's 10 U.S.C. § 851 requirement of a "secret written ballot."

■ Some situations can be imagined which were not addressed specifically by the judge's instructions or by the Manual. For example, if one member seeks reballoting with a view to decrease and another requests a revote with a view to increase, what sequence should be followed in con-

sidering the two requests, and how should the differential voting requirements be applied? If there is a vote to reconsider, may additional sentencing proposals be submitted which were not submitted originally, and, if so, should such proposals be invited by the president of the court-martial? However, without some specific request or demonstrated occasion for doing so, the judge was not under an obligation to cover every conceivable contingency that might arise when the court members were deciding whether to reconsider their original vote. We note, also, that trial defense counsel had no objection to the instructions—a circumstance which leads us to conclude that he, too, found the instructions adequate for the occasion. *Cf. United States v. Salley*, 9 M.J. 189 (C.M.A. 1980). Finally, in view of the 6 minutes that elapsed between the time that the court closed after receiving the instructions on reconsideration and its reopening to announce sentence, we are sure that appellant was not prejudiced by the judge's failure to expound in more detail on the procedure for reconsideration.

## IV

The decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER and Senior Judge COOK concur.