**UNITED STATES**

v.

**Airman First Class Richard A. PEREZ,
FR050–66–3210 United States Air
Force.**

**ACM 29140.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 Nov. 1990.

Decided 23 Nov. 1992.

**584**

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Major Paul H. Blackwell, Jr., and Major Jeffrey C. Lindquist.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Airman First Class Perez was convicted of conspiracy to commit larceny and larceny.[1] He raises four issues before us, none of which warrants relief.

Appellant was a security policeman with less than 2 years in the Air Force when he took a part-time job as an exchange detective in the base exchange at Andrews Air Force Base, Maryland. His primary duty was to suppress theft of exchange merchandise. Shortly thereafter, appellant and two other exchange detectives began a course of conduct in which they repeatedly stole exchange merchandise. Exchange managers noticed irregularities and asked the Air Force Office of Special Investigations (OSI) for help. OSI agents installed two hidden video cameras: one camera observed the exchange detectives' office; the other observed the counter where refunds were given. The OSI also tapped into the exchange's own video system, which had 22 cameras that could be monitored from the exchange detectives' office and the exchange manager's office.

For about a month, OSI agents monitored and recorded the images from their own cameras and the exchange video system. Three OSI agents testified that two or three times a week they saw appellant and two other exchange detectives steal various items of merchandise. They also saw the three assist each other by helping to conceal stolen items on their persons, carrying stolen items out the back door, loading the stolen items in one of their automobiles, and turning the exchange's video system off to avoid detection.

Appellant's two co-conspirators testified at his trial, describing these repeated cooperative thefts. A 1–hour videotape of appellant's participation in thefts on three occasions was admitted into evidence and played for the members. Two pretrial admissions by appellant were admitted, as was a list of stolen merchandise recovered from each of the co-conspirators. The value of the recovered merchandise, together with items known to have been returned for cash to various Army and Air Force Exchange Service branches by the conspirators, totaled nearly $15,000. The items recovered from appellant alone were valued at $1,391.44.

## ADMISSIBILITY OF OSI AGENTS' TESTIMONY

Appellant argues the military judge erred when, over defense objection, he permitted three OSI agents to testify about events they observed while monitoring the video surveillance system. Everything these witnesses saw on the video monitor was recorded, and the recordings were available to the court. The prosecution presented a "composite" videotape showing appellant's actions on three occasions. The videotapes were the best evidence, appellant argues, and the witnesses should not

---

1. Articles 81 and 121, UCMJ, 10 U.S.C. §§ 881, 921.

have been permitted to describe the events they observed on the video system monitor.

■ This is a somewhat novel argument. The few reported cases concerning videotape evidence have addressed the admissibility of the videotapes.[2] In this case, however, the issue concerns the admissibility of testimony by persons who watched the video monitors while the images were received and recorded. Appellant argues the videotape is the best evidence of what the video monitor showed, so no witness should be allowed to testify as to what the witness saw on the monitor. We disagree.

It seems fairly clear that if there were no recordings made, these witnesses could testify about what they saw on a video monitor, just as if they were watching through binoculars, or monitoring an X-ray machine for screening mail or luggage. The use of an electronic or mechanical aid does not make one any less an eyewitness. The existence of a videotape recording of what the witness saw is of significant value to the court in verifying the accuracy of the witness' perceptions and memories, but we are unaware of any rule of evidence that would exclude the witness' eyewitness testimony.

■ Military judges have broad discretion to admit such testimony. There is no general rule of evidence that only the "best" evidence is admissible in trials by court-martial. The general rule is that all relevant evidence is admissible unless it is unduly prejudicial or it is inadmissible under some specific exclusionary rule. Mil.

R.Evid. 401, 402, 403. The "best evidence rule" applies only to the proof of the contents of a writing, recording, or photograph by evidence other than the original. Mil. R.Evid. 1001–08. It was satisfied here when a duplicate original of the videotape was admitted and played for the members.

The testimony of the three OSI witnesses in this case contained more than a description of what they saw on the video monitor. The witnesses' familiarity with the layout of the exchange, the coverage and limitations of the video system, and routine exchange operations allowed them to give useful perspective to the members before the members watched the portions of the videotape relating to each of the witnesses' testimony. They identified persons on the videotape who had not appeared in court. Two of the OSI witnesses described relevant events they witnessed that were contemporary with the events on the videotape, but that did not occur in the cameras' fields of view.[3] Their testimony could be rebutted or tested on cross-examination for bias, error, confusion, etc., to the same extent as any other witness. The members saw the videotape, and could decide for themselves whether it was consistent with the testimony they heard. In these circumstances we find the military judge did not abuse his discretion in admitting this testimony.

■ The military judge also allowed one of the OSI agents to testify, over defense objection, that at one point appellant turned down the exchange's video surveillance system.[4] The videotape shows clear-

2. *See United States v. Reichart*, 31 M.J. 521 (A.C.M.R.1990), *pet. denied*, 32 M.J. 309 (C.M.A. 1991), and the cases discussed therein.

3. The OSI agents monitored the video surveillance from a van in the exchange parking lot. One of the agents testified concerning an occasion when appellant and a co-conspirator concealed items in their clothing in the exchange detectives' office, left the exchange by the employees' entrance, removed the items from their clothing, and placed them in the co-conspirator's car. Then they returned to the office and concealed more items on their persons, went back out to the car, and drove away. The videotape shown to the members depicted the events in the office, which the agent saw on the video monitor, but not the events in the parking

lot, which the agent saw directly. Similarly, another OSI agent testified concerning events on the evening appellant was apprehended. The witness watched on the video while appellant concealed photographs and other items on his person in the office, and then participated in a search that found the items in appellant's clothes. The search, which occurred in the parking lot, was not recorded on the video system.

4. This was accomplished by operating the controls on the console in the exchange detectives' office to point the cameras in the exchange's surveillance system downward and to close their lens irises. This prevented any picture from appearing on the monitors in the exchange

ly that the system was being turned down, but the control console is not in the picture. The defense objected to the witness' testimony concerning his conclusion that appellant was the operator. This related to a particularly significant issue, since the only overt act alleged in the conspiracy specification was that, in order to effect the object of the conspiracy (i.e., larceny of exchange merchandise), appellant "turned off the surveillance cameras."

The witness testified the basis for his conclusion was that there were only two persons in the exchange detectives' office, which was the only place where the system could be controlled in this fashion. One of those two persons could be seen on the screen, busily hiding stolen merchandise in his clothes. The other was appellant, so he had to be the person manipulating the controls. There was more than adequate evidence to support this inference, but it could be rebutted or tested on cross-examination. The triers of fact could adopt or reject it after they saw the videotape. The question whether the witness' inference was admissible under Mil.R.Evid. 701 was within the discretion of the military judge. We hold that in these circumstances he did not abuse that discretion.

## SUFFICIENCY OF EVIDENCE OF AN OVERT ACT

■ A conviction of conspiracy under Article 81, UCMJ, 10 U.S.C. § 881, requires a finding, beyond a reasonable doubt, that one of the conspirators did an overt act to effectuate the object of the agreement. MCM, Part IV, paragraph 5c(4) (1984). The government may allege more than one overt act. It need not prove every overt act charged, but it must allege and prove at least one. The overt act found by the factfinders need not be exactly the same as the overt act charged, so long as it is substantially similar to the overt act that was alleged. *United States v. Collier*, 14 M.J. 377 (C.M.A.1983).

■ In this case there was a veritable cornucopia of overt acts from which to

choose. There was overwhelming evidence that actual thefts occurred, the conspirators helped each other conceal stolen property on their persons so it could be safely removed from the exchange, they helped each other carry stolen items out the back door and load them into a conspirator's car, they acted as lookouts for one another, and they regularly turned down the surveillance cameras to avoid detection by anyone who happened to be in the manager's office. By charging only one overt act, the government made its prosecution of appellant for conspiracy dependent on proving he personally turned down the surveillance camera system.

Inartful questioning of several of the government's witnesses deprived the factfinders of some of the evidence apparently available on this issue. One of the conspirators who testified against appellant said only, "We would turn the cameras off." The other said, "The cameras would be turned off." More helpful to the prosecution, one of the OSI witnesses testified all three conspirators at one time or another turned the cameras down. Another described the occasion, mentioned above, when appellant was one of two people in the office when the cameras were turned down, and the other person can be seen stuffing his clothes with loot. The videotape of that event was shown to the members, as was the videotape of an occasion when appellant was the only one in the office when the video system was shut down.

■ Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), a court of military review has the duty of determining not only the legal sufficiency of the evidence but also its factual sufficiency. The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making

detectives' office or in the exchange manager's office. The two cameras installed by OSI could

not be controlled from inside the exchange and were not affected.

allowances for not having personally observed the witnesses, the judges of the court of military review are themselves convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

After careful review of the evidence bearing on this issue, we find the evidence legally and factually sufficient. We are convinced, beyond a reasonable doubt, appellant on at least two occasions turned down the exchange's video surveillance system, rendering it inoperable. We find no significance in the interchangeable use of the terms "turned down" and "turned off." We are also convinced, beyond a reasonable doubt, that he did this to effectuate the object of the conspiracy by avoiding detection of thefts from the exchange by the conspirators.

## MOTION FOR FINDING OF NOT GUILTY

After the members deliberated on findings, the president gave the completed findings worksheet to the military judge. The military judge found the members had made inconsistent findings, instructed them again, and sent them back to make correct findings. The members returned and asked for the testimony of two OSI agents to be played back for them, which was done. They resumed their deliberations. When they returned, the members announced they found appellant guilty of both larceny and conspiracy. Appellant argues the military judge erred in not granting a defense motion for a finding of not guilty based on the members' initial findings and on the ensuing discussion between the president and the military judge.

The draft findings worksheet shows that the members initially found appellant guilty of conspiracy, but they had lined through the language in the specification alleging he turned off the surveillance cameras. The president told the military judge the members unanimously agreed that act had not been proven beyond a reasonable doubt. The military judge instructed the members they could not find appellant guilty of conspiracy unless they also found he had done the overt act alleged. The president asked if they could substitute another overt act, but the military judge correctly told them they could not do so.[5] Appellant argues the military judge should have granted his motion for a finding of not guilty on the conspiracy charge and its specification once the president said the members were in unanimous agreement that the evidence did not prove, beyond a reasonable doubt, that appellant had turned off the surveillance cameras.

A motion for a finding of not guilty may be made by the defense under R.C.M. 917 anytime before findings are announced.[6] Such a motion "shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charge. The evidence shall be viewed in the light most favorable to the prosecution, without an evaluation of the credibility of witnesses." R.C.M. 917(d). In this case, as discussed above, there was ample evidence proving that appellant turned down the surveillance cameras on at least two occasions. It would have been error for the judge to grant a motion for a finding of not guilty.

The defense motion could also be construed as a request for the military judge to treat the draft findings worksheet, together with the president's comments, as an announcement of a "not guilty" finding on the conspiracy charge. It would follow that the judge erroneously ordered the

---

5. Under *Collier, supra,* another overt act could have been substituted by the members only if it was "substantially similar" to the one alleged. The military judge's instruction was correct in this case, where the evidence did not raise any other overt act substantially similar to the one alleged.

6. In *United States v. Griffith,* 27 M.J. 42, 48 (C.M.A.1988), the Court of Military Appeals announced that a military judge also has the inherent power, even after findings are announced, to dismiss a specification "as to which he concluded the proof was legally insufficient." The same standard of sufficiency of the evidence is to be used as in ruling on a motion for a finding of not guilty.

members to reconsider their verdict,[7] and the reconsidered findings would be void.

For situations where the findings drafted by the members are erroneous, R.C.M. 921(d) provides as follows:

> After the members have reached findings on each charge and specification before them, the court-martial shall be opened and the president shall inform the military judge that findings have been reached. The military judge may, in the presence of the parties, examine any writing which the president intends to read to announce the findings and may assist the members in putting the findings in proper form. Neither that writing nor any oral or written clarification or discussion concerning it shall constitute announcement of the findings.

The discussion accompanying R.C.M. 922(b) also provides: "If the findings are ambiguous, the military judge should seek clarification." The Court of Military Appeals has held in a variety of situations that military judges have both the authority and the duty to assist the members in correcting irregular findings before they are formally announced. *United States v. Ricketts,*[8] 1 M.J. 78 (C.M.A.1975); *United States v. McAllister,* 19 U.S.C.M.A. 420, 42 C.M.R. 22 (1970); *United States v. London,* 4 U.S.C.M.A. 90, 15 C.M.R. 90 (1954); *United States v. Downs,* 4 U.S.C.M.A. 8, 15 C.M.R. 8 (1954). In *United States v. Hawkins,* 44 C.M.R. 790 (A.F.C.M.R.1971), *pet. denied,* 44 C.M.R. 939 (C.M.A.1972) this Court found that a military judge acted properly when, after he found the members' draft finding incorporated some of the elements of both voluntary manslaughter and involuntary manslaughter, he instructed them and sent them back into deliberations. The resulting finding of guilty of voluntary manslaughter was affirmed.

In this case, we find no error in the military judge's actions in instructing the members on the conspiracy charge and sending them back to correct their draft findings. The members' subsequent request to hear certain evidence again was expressly authorized under R.C.M. 921(b). We hold there was no error in the procedure used by the military judge to assist the members to correct their irregular findings.

## MOTION TO SUPPRESS APPELLANT'S ADMISSIONS

■ Appellant also argues the military judge erred by denying a defense motion to suppress [9] two handwritten statements he gave to OSI interrogators on the night he was apprehended, as well as evidence derived from those statements. The basis for this motion was his testimony that he asked for counsel, but the agents continued to interrogate him and coerced him into making admissions. Four OSI agents, involved at various times in interrogating appellant, testified he never asked for counsel. Appellant's handwritten statements were made on "Statement of Suspect" forms; they contain appellant's initials next to printed entries reciting that he had been advised of his rights, and that he

---

7. *See* R.C.M. 924.

8. In *Ricketts,* the members showed the military judge a draft findings worksheet stating the accused was not guilty of attempted murder, but guilty of aggravated assault. Their language was imprecise, but the military judge decided it purported to be a finding of guilty to aggravated assault by intentional infliction of grievous bodily harm. He had earlier instructed the members they could find the accused guilty of aggravated assault as a lesser included offense, but he instructed them only on aggravated assault by a means likely to cause grievous bodily harm. After seeing the members' draft findings, he gave them new instructions on aggravated assault by intentional infliction of grievous bodily harm, of which the members ultimately found the accused guilty. The Court of Military Appeals construed the members' draft findings as a proper verdict in which they found the accused guilty of aggravated assault with a means likely to produce grievous bodily harm, and it held the military judge erred by giving them new instructions on an offense not included in his original instructions. The Court specifically stated that its holding did not apply to cases where the draft findings are illegal, as in this case.

9. Mil.R.Evid. 304.

did not want a lawyer.[10] The military judge made detailed findings in which he resolved credibility issues against appellant, found appellant was given appropriate rights advisements, and found he did not ask for counsel. After giving due consideration to the trial court's opportunity to personally observe the witnesses, and after reviewing all the relevant evidence of record, we adopt the military judge's findings as our own. We conclude appellant's statements were not the product of any violation of his right to counsel and were properly admitted.

We have examined the findings, and we find them legally and factually correct. We have given individualized consideration to the appropriateness of the sentence, weighing the nature and seriousness of the offenses, the character and military performance of appellant, and all the circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982). We find that the sentence as adjudged and approved is not inappropriate.

Accordingly, the approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge LEONARD and Judge JAMES concur.

---

10. The statement form on which appellant's second handwritten statement was made has his initials next to a printed entry stating, "I want a lawyer. I will not make any statement or answer any questions until I talk with a lawyer." His initials there are crossed out, a check mark and a smaller set of his initials appear beside the crossed-out entry, and his initials appear again beside the next printed entry stating, "I do not want a lawyer." Appellant testified he initially asked for a lawyer and was later coerced into changing his mind. The two OSI agents present at that time testified appellant simply made an error in completing the form, which he corrected immediately; he never asked for counsel. The military judge resolved this issue of fact against appellant.