*493 OPINION OF THE COURT
Mary E. Bednar, J.
On October 3, 2013, a petition was filed charging the respondent with petit larceny (Penal Law § 155.25) and criminal possession of stolen property in the fifth degree (Penal Law § 165.40). A deposition from asset protection investigator Jude Bright attached to the petition states that the respondent stole items from an American Apparel store on August 23, 2013. The respondent has moved to prevent investigator Bright from testifying about the alleged larceny, as a video-surveillance tape of the incident has been destroyed. For the reasons that follow I find that the motion must be denied.
Findings of Fact
The following information has been gleaned from the court file and memoranda of law submitted by respondent and the presentment agency.
On August 23, 2013, investigator Bright, an employee of American Apparel, was in his store’s camera surveillance room. While watching a live feed from the surveillance camera “of what is happening in the store at the time” (deposition, Oct. 1, 2013), investigator Bright allegedly saw the respondent shoplift a watch. The case was referred to the presentment agency from Probation on September 30, 2013. On October 1, 2013 an attorney from the presentment agency met with investigator Bright, who told the attorney that all American Apparel surveillance videotapes are stored in a central location in Los Angeles, California and that the tape from August 23, 2013 might have been destroyed.
On October 4, 2013, the presentment agency sent an email to investigator Bright, in which they asked about the tape’s status. On October 9, 2013, investigator Bright told the presentment agency that the August 23, 2013 videotape was being sent to him from American Apparel’s central storage facility in Los Angeles, via Federal Express. On October 15, 2013, investigator Bright told the presentment agency that there had been a miscommunication between the storage facility and him and that the surveillance tape had been destroyed. The presentment agency subsequently spoke to a representative of American Apparel, who said that surveillance tapes are kept for 39 days before they are destroyed. According to the representative from American Apparel, the August 23, 2013 tape involving the respondent had been destroyed, because the store believed that *494 the incident was being resolved through the Department of Probation and that court action would not be required.
Conclusions of Law
“The ‘oft-mentioned and much misunderstood’ best evidence rule simply requires the production of an original writing where its contents are in dispute and sought to be proven . . .
“Under a long-recognized exception to the best evidence rule, secondary evidence of the contents of an unproduced original may be admitted upon threshold factual findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence
“[T]he proponent of such derivative proof has the heavy burden of establishing, preliminarily to the court’s satisfaction, that it is a reliable and accurate portrayal of the original.” (Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643-645 [1994].)
Surveillance videotapes fall under the “best evidence” rule (see People v Cyrus, 48 AD3d 150 [1st Dept 2007]).
In his memorandum of law the respondent argues that testimony by investigator Bright concerning the content of the videotape would violate the best evidence rule, both because the presentment agency has failed to adequately explain the unavailability of the videotape and because the investigator could not give a reliable and accurate portrayal of the contents of the tape. Respondent also argues that the destruction of the videotape violates Brady and Rosario requirements for the production of evidence and asks that the court apply sanctions for the violation.
In their memorandum of law the presentment agency argues that the best evidence rule is inapplicable to the facts at bar, because investigator Bright would be testifying about what he observed while watching the alleged incident in real time through a live video feed. They also argue that there is no Brady or Rosario violation, since law enforcement never had possession or control over the videotape.
Turning to my analysis, this court’s research has found no New York cases that have ruled on whether the best evidence rule applies to the testimony of observations made through live video feeds. But courts in foreign jurisdictions have ruled on the issue.
*495 In People v Tharpe-Williams (286 Ill App 3d 605, 676 NE2d 717 [1997]), the Appellate Court of Illinois upheld a shoplifting conviction that was based on the testimony of two Wal-Mart store loss prevention agents, who watched the thefts in a contemporaneous telecast on the video monitor in their security office. The videotapes of the incident were never submitted into evidence at trial.
The defendant argued that the testimony violated the best evidence rule, but the appellate court disagreed as the loss prevention agents “sought to testify not to the contents of the videotape, but to an incident they observed on the video monitor.” (Tharpe-Williams, 286 Ill App 3d at 610, 676 NE2d at 720.) The justices reasoned that in testifying to what they saw on the video monitor the loss prevention agents were testifying to their personal observations. The court likened the testimony of the witnesses to the testimony of someone recounting what they had observed 100 yards away through a telescope.
“As long as the telescope was functioning properly, we see no reason why they would not be able to testify as to what they observed. Similarly, as long as the video system was functioning properly, [the loss prevention agents] could testify as to what they observed on the video monitor.” (Tharpe-Williams, 286 Ill App 3d at 611, 676 NE2d at 721.)
In United States v Perez (36 MJ 583 [US Air Force Ct of Military Review 1992]) the court upheld a trial court verdict of thefts on an Air Force base, where special investigation officers testified to what they observed while monitoring a video surveillance system. In ruling that allowing the testimony did not violate the best evidence rule the court reasoned:
“It seems fairly clear that if there were no recordings made, these witnesses could testify about what they saw on a video monitor, just as if they were watching through binoculars, or monitoring an X-ray machine for screening mail or luggage. The use of an electronic or mechanical aid does not make one any less an eyewitness. The existence of a videotape recording of what the witness saw is of significant value to the court in verifying the accuracy of the witness’ perceptions and memories, but we are unaware of any rule of evidence that would exclude the witness’ eyewitness testimony.” CUnited States v Perez at 585.)
Courts in Indiana and Massachusetts have also allowed witnesses to testify about events they saw through live video *496 camera feeds, even though the videotapes were not introduced into evidence. In Collins v State (950 NE2d 374 [Ind Ct App 2011] [table; text at 2011 WL 2565691, *2, 2011 Ind App Unpub LEXIS 886, *6 (2011)]), a shoplifting case, the court reasoned that the loss prevention manager who testified “was merely recounting what she observed using the cameras and that, for the purposes of admissibility of her testimony, this is no different than if [the witness] had been on the floor of the store observing [defendant’s] activities.” And in Commonwealth v Capeles (79 Mass App Ct 1129, 950 NE2d 84 [2011] [table; text at 2011 WL 2682631, 2011 Mass App Unpub LEXIS 881 (2011)]), the Appeals Court of Massachusetts held that testimony from police officers about setting up a surveillance camera and the nature of the equipment was sufficient to lay a foundation for the officers to testify about an assault witnessed on a live video feed, as the observations of the police were analogous to observations seen through binoculars.[1]
The reasoning of these foreign courts is persuasive. Just as a witness can testify to what they observed while looking through binoculars (see People v Garcia, 207 AD2d 664 [1st Dept 1994] [testimony of police observation of drug sale seen through binoculars is admissible into evidence]), a store employee should be permitted to testify about what he or she has witnessed through a live video feed, whether or not a videotape of the incident is introduced into evidence. Accordingly, I find no best evidence violation in the case at bar and will permit investigator Bright to testify concerning his observations as seen on American Apparel’s live video feed, provided it can be established that the video equipment was working properly and that the cameras conveyed a contemporaneous and true-to-life view of events in the store.
As for the respondent’s claim of Rosario and Brady violations, the case law provided by the presentment agency sufficiently rebuts such claims, as law enforcement never possessed the destroyed videotapes and the tapes were not exculpatory (see People v Walloe, 88 AD3d 544 [1st Dept 2011]; People v Brock, 246 AD2d 406 [1st Dept 1998]).
For all the reasons herein, the respondent’s motion, based on the best evidence rule, to exclude the testimony of investigator Bright concerning what he saw on American Apparel’s video *497 monitors is denied.[2] Also denied is respondent’s request for a sanction, based upon Brady and Rosario violations.

. In Collins and Capeles the best evidence rule was not in issue.

. Although New York has not ruled directly on the issue at bar, the Second Department implied in People v Fondal (154 AD2d 476 [1989]) that testimony based on observations from a live video feed is not subject to the best evidence rule. After ruling that the trial court properly allowed into evidence a videotape of the defendant shoplifting, the justices noted: “[f]urthermore, in light of the testimony of the two Sears’ employees who observed the defendant’s conduct via a closed-circuit television, and in light of the corroborative testimony of the defendant’s accomplice, any error in connection with the admission of the videotape would have to be considered harmless.” (Fondal at 477; see also People v Allison, 21 Misc 3d 1108[A], 2008 NY Slip Op 52008[U] [Nassau Dist Ct 2008] [noting that testimony about events observed contemporaneously through video monitoring would be “ ‘facts of an evidentiary character’ ” (citations omitted)].)