UNITED STATES, Appellee

v

ROBERT R. BEATTY, Private First Class
U. S. Army, Appellant

10 USCMA 311, 27 CMR 385

No. 11,653

Decided April 3, 1959

*Miss Madeline E. DeFina* argued the cause for Appellant, Accused.

*First Lieutenant Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief was *Major Thomas J. Nichols*.

ROBERT E. QUINN, Chief Judge:

A general court-martial in Germany convicted the accused of assault with intent to commit rape, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and sentenced him to dishonorable discharge, total forfeitures, and confinement at hard labor for two years. Intermediate appellate authorities affirmed. We granted review on an issue pertaining to defense counsel's right to see the pretrial advice and the post-trial review of the staff judge advocate. While the case was pending, civilian counsel moved to file an affidavit from the accused; we granted the motion as an application for a petition for new trial. Later, as a result of certain developments on the oral argument, we directed the procurement of additional information pertaining to the conduct of trial counsel at the trial.

In regard to the right of trial defense counsel to see the pretrial advice and the post-trial review, the board of review noted there was "an unfortunate lack of respect and confidence" between the appointed defense counsel and the staff judge advocate. But it determined that the situation did not deprive the accused in this case of any substantial right. We agree with the board of review's conclusion.

As to the pretrial advice,[1] appellate defense counsel contends that had trial defense counsel been permitted to see it, he might have "supplement[ed]" the staff judge advocate's "presentation with mitigating facts" and thereby have influenced the convening authority's choice of court-martial, i.e., general, special, or summary. The suggested course of action is indeed open to defense counsel. But the opportunity exists independent of the right to see the pretrial advice. The record also shows the accused was represented by specially requested defense counsel at the Article 32 investigation and that sworn statements by all prospective witnesses were available for his examination. No motion for a continuance for further preparation was made at the trial, and it is not contended that trial defense counsel were, in fact, unprepared to try the case. Clearly, therefore, there is no merit in this aspect of the accused's contention of error.

Defense counsel requested permission to see the post-trial review about two months after the case had been acted upon by the convening authority and forwarded to the office of The Judge Advocate General for review by a board of review. Assuming that trial defense counsel's authority to represent the accused had not yet ended,[2] the review was part of the record before the board of review available to appellate defense counsel. Appellate defense counsel was responsible for representing the accused before the board of review. Article 70(c), Uniform Code of Military Justice, 10 USC § 870. Since the post-trial review was readily available for his inspection, we are unable to see how the staff judge advocate's refusal to allow trial defense counsel the right to examine a retained copy of the review deprived the accused of the effective assistance of counsel or of any other substantial right.

Turning to the matter on which we requested additional information, it ap-

---

[1] See Manual for Courts-Martial, United States, 1951, paragraph 44*h*, page 65.

[2] Article 38, Uniform Code of Military Justice, 10 USC § 838, provides in part that defense counsel may forward "a brief of such matters as he feels should be considered in behalf of the accused on review." See also Manual for Courts-Martial, United States, 1951, paragraph 48*j*. Since the convening authority's action is one of the matters considered on review, it would appear to be important that defense counsel be accorded an opportunity to examine the post-trial review. United States v Grice, 8 USCMA 166, 23 CMR 390; United States v Collins, 10 USCMA 154, 27 CMR 228; United States v Callahan, 10 USCMA 156, 27 CMR 230.

pears that both trial and defense counsel knew the complainant had had extramarital relations. Defense counsel believed these were limited to the victim's intended husband, but the witness had told the trial counsel of three separate incidents with different men. Neither counsel, however, inquired into the matter at trial. Defense counsel did not do so because, he says, he was afraid if he raised the matter, the victim's fiance would be called as witness and corroborate her testimony regarding the injuries she suffered in the assault by the accused. However, defense counsel cross-examined the victim, without objection by trial counsel, about visits to various taverns. Also, without objection by trial counsel, he adduced testimony by other witnesses to the effect that the places visited by the victim were frequented by known prostitutes.

In his final argument, trial counsel in part said:

". . . She lived in a small cow town where refugees are looked down upon and she thought Americans were nice because no GI prior to the accused had mistreated her. Is she to be condemned for liking Americans? For liking American music and liking to dance? There has been no one to testify that they ever knew of her having had sexual relations with anyone. As far as we know she is a virgin and that is more than can be said for many girls her age."

The prosecuting attorney represents the people. He can and should proceed against an offender with █ vigor and strength, but it is "as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger v United States, 295 US 78, 55 S Ct 629, 79 L ed 1314; United States v Valencia, 1 USCMA 415, 4 CMR 7.

Here, trial counsel exceeded the bounds of fair comment on █ the evidence and deliberately conveyed to the court-martial the false idea that the witness was a virgin. He knew the witness had had sexual relations with three young men. Nevertheless, he represented to the court that he could have objected to the defense evidence concerning her attendance at places frequented by soldiers but he refrained from doing so because he wanted to "see just how far the defense would go in an attempt to smear this victim and how little she could be damaged by their efforts." He went on to say that if the testimony adduced by the defense had been excluded on the Government's objection, it might have left the court with "the impression that she was well known for her illicit sexual affairs, whereas in reality she is only a country girl who was unfortunate enough to be a war refugee." A good trial counsel, he maintained, could perhaps have "protected the main prosecution witness by bringing in a witness to testify as to her good character for every witness who made insinuations reflecting on her character." Thus, he feigned inexpertness to emphasize the inference of virtue on the part of the complainant.

However, a determination that the Government's attorney acted improperly is not the whole of the █ matter. We must also consider whether his action █ presented a fair risk of influencing the court-martial to the prejudice of the accused. It is well settled that misconduct by a prosecuting attorney in his final argument does not justify reversal of an otherwise valid conviction if the evidence of guilt is clear and compelling. United States v Antonelli Fireworks Co., 155 F 2d 631 (CA 2d Cir) (1946), cert den, 329 US 742, 67 S Ct 49, 91 L ed 640. The testimony of the complaining witness in this case is straightforward and unrebutted in every important particular. To a substantial extent she was corroborated by Sergeant W. G. Kingsborough. He saw her "running or walking" on the road near the scene of the assault. She was "bawling or crying" and "upset." When Kingsborough stopped his car she collapsed as she attempted to get in. She gave him the "general idea" of what had happened

and "wanted . . . [him] to do something about that man." The sergeant informed her it was "not for . . . [him] because that's the MP's job." But he backed up to the lane in which the accused had parked his car. He was in time to note the license number of the car as the accused drove out of the lane. A report of the incident was made to the military police. In the meantime the accused returned to his barracks. He had the charge of quarters falsify the pass sign-out list by removing his name and substituting another. See United States v Hurt, 9 USCMA 735, 773, 27 CMR 3. In the light of this evidence, the question of the victim's chastity fades into insignificance, especially when we bear in mind the charge is assault with intent to commit rape, not consummated rape, so that evidence of the victim's sexual relations with other men is admissible only by way of a conviction or on cross-examination and is relevant only for the purpose of impeachment. See Manual for Courts-Martial, supra, paragraph 153b; United States v Moore, 5 USCMA 687, 18 CMR 311.

Since the evidence of guilt is clear and convincing, in our opinion, trial counsel's improper argument did not prejudice the accused as to the findings of guilty. It is also apparent that the false imputation of chastity did not influence the court-martial as to the sentence. The maximum permissible sentence extended to confinement at hard labor for twenty years. However, the court adjudged a sentence which included confinement at hard labor for two years. See United States v Nicholson, 8 USCMA 499, 25 CMR 3.

We have examined the other allegations of error. We find nothing which justifies reversal of the findings of guilty or the sentence. We therefore affirm the decision of the board of review.

As for the petition for new trial, it alleges the accused told his defense counsel that when he was first apprehended he was interrogated by an officer who demanded a confession from him; that officer allegedly acted as the law officer. Defense counsel denies he received such information from the accused; the law officer denies he participated in any such incident or that he was anywhere near the area at the time; and the two Criminal Investigations Division agents who conducted the investigation deny the incident occurred or that they know the law officer. We, therefore, deny the petition.

LATIMER, Judge (concurring in the result):

I concur in the result.

This case is truly a battle of affidavits, and it points up the difficulties which can be expected whenever we permit an accused the untrammeled privilege of using ex parte post-trial statements to blame others for his predicament. In the file are accusations by the accused, or his numerous counsel, charging the staff judge advocate, law officer, trial counsel, trial defense counsel, and appellate military defense counsel with legal chicanery. As may be expected, in his frantic endeavor to escape the penalty for his offense, the accused has adopted the well-known technique of attacking the trial and appellate participants in hope of beclouding the real issue of his guilt or innocence. As a result, this appeal has become a free-for-all in which many are tarred by reckless and irresponsible charges of incompetency, inadequacy, deceit, and dishonesty. Generally speaking, I believe we contribute to the destruction of an orderly appellate procedure when we countenance the use of post-trial affidavits in this manner.

I agree with the first portion of the principal opinion, for I believe that defense counsel is entitled to see the pretrial advice and the post-trial review. This conclusion necessitates no further consideration here, however, for, as indicated by the Chief Judge, there is no reasonable possibility the accused was prejudiced by the staff judge advocate's refusal to allow defense counsel to see the post-trial review.

While I am in agreement with the conclusion reached in connection with the second issue, certain language in the base opinion necessitates that I set

forth my views. It is there asserted that Government trial counsel "acted improperly," "exceeded the bounds of fair comment on the evidence," and "deliberately conveyed to the court-martial the false idea that the complaining witness was a virgin." Those are harsh accusations which, in light of the entire record, are of questionable validity and are entirely unnecessary to a proper disposition of this case. Certainly if, as we hold, the accused was afforded a fair trial, there is no reason to single out and point the finger of misconduct at trial counsel. While he fought hard, as I interpret the record, he did no more than meet the situation created by the defense.

In order to present this matter properly, it is necessary that some of the facts be recited in greater detail and the theory of the defense be considered. This is particularly important for the reason that the statement of trial counsel will appear fair when not torn out of context and considered in vacuo.

The accused was charged with an assault upon a named sixteen-year-old German girl with intent to commit rape. The facts show that the victim accepted a ride with him and remained in his car, largely relying upon his assertions that he was a clergyman and would show her some churches. As time elapsed, she became apprehensive and requested that she be taken home. Instead of complying with her request, he drove to an isolated area and proceeded to assault her. When she resisted and cried out, he physically abused her while continuing to press his amorous desires. During a thirty to forty-five minute struggle, he used threats to kill and physical force in an effort to break down her resistance. When he finally abandoned his attempt and allowed her to leave the car, she immediately flagged down a passing motorist who noticed her disheveled appearance and, upon her request, drove her to a military police station. She made a complaint to the military authorities, and the accused was apprehended.

The foregoing facts were not disputed but, to affect the credibility of the victim and weaken her testimony, the defense adopted the strategy of attempting by innuendoes to establish to the satisfaction of the court that she was an unchaste girl who willingly consented to the assault. Defense counsel, in developing his defense, did not seek to prove sexual intimacies on the part of the victim with third parties; rather he sought to show she was an habitue of gasthauses and places of questionable reputation which were frequented by prostitutes. He established her presence in the taverns on a few occasions, proved she had been seen walking in the area used by women of the streets, and fixed the German practice of registering prostitutes, but he failed to prove the victim was one of that class. However, his theory was clear, namely, that he could best serve his client by weakening the victim's reputation for truth and veracity by generalities which could not be rebutted rather than by specifics which might be satisfactorily explained. It was in the backdrop of the foregoing circumstances that trial counsel made the statement which my associate now terms improper comment.

In measuring the legal behavior of trial counsel, it is necessary to give consideration to his obligations as a prosecutor. In the case at bar, prior to the hearing he learned from the complaining witness that at some time in her life she had participated in sexual relations with three different men. He knew defense counsel was aware of at least one of these prior instances of unchastity and, anticipating the interview of this witness by defense, he cautioned her to tell the truth when questioned about these matters. Thereafter, defense counsel interviewed the prosecutrix on several occasions, but in spite of the fact that he had knowledge of one prior indiscretion, he refrained from questioning her regarding prior sexual experiences. At that time he may well have concluded not to alert her by disclosing the information he possessed, or he may have decided the circumstances surrounding the acts made it more appropriate that they re-

**316**

main undiscussed. In addition, when she became a witness defense counsel chose not to refer to her immorality. While at first blush it may seem a bit unusual that he ignored the subject at the time of trial, the mystery disappears when the veil is lifted by him in his post-trial correspondence. Generally speaking, he stated that had he gone into the subject he would have opened up an avenue of approach to the Government which would have doomed the accused. His reasoning was not without justification, both from the standpoint of findings and sentence, because the evidence would have shown selectivity on the part of the victim. The one known cohabitor was engaged to the victim and, if called, would have established that rather severe injuries were inflicted on her by the accused. Defense counsel had very good reason to keep that witness out of the courtroom, and it is extremely doubtful that, had he known the facts of the other instances, he would have injected them into the trial for they, too, had potentialities for boomeranging against his client.

As the result of the tactics employed by the defense, trial counsel assumed correctly that in closing argument he would be required to meet the contention that the very presence of the victim in gasthaus areas established her as a woman of the streets and unworthy of belief. He had planned his prosecution on the expectation that the defense would exploit the victim's indiscretions but the new development forced a change in his strategy. Anticipating the argument which was in fact later made, he offered the following comment:

". . . She lived in a small cow town where refugees are looked down upon and she thought Americans were nice because no GI prior to the accused had mistreated her. Is she to be condemned for liking Americans? For liking American music and liking to dance? There has been no one to testify that they ever knew of her having had sexual relations with anyone. As far as we know she is a virgin and that is more than can be said for many girls her age."

A fair reading of his entire summation convinces me that trial counsel's remark fell within the bounds of fair and proper comment. I do not believe he has to sit by and be the victim of defense strategy. Insinuations and innuendoes, even though farfetched, need not go unnoticed and unanswered. Recurrent throughout his final summation was the permissible argument that, although defense had indirectly attacked the victim's character, there was no specific evidence introduced at trial to show immorality. His statement was accurate and supported by the record. In context, it is patently clear that his use of the phrase, "As far as we know" was impersonal; it simply denoted collective knowledge and indicates clearly that he was confining his comments to the evidence before the court. It could not have been reasonably construed by the court members to encompass more than a comment based upon the record which bound them. See United States v Private Brands, 250 F2d 554 (CA 2d Cir) (1957); Henderson v United States, 218 F2d 14 (CA 6th Cir) (1955); United States v Klein, 187 F2d 873 (CA 7th Cir) (1951). As was stated in Stewart v United States, 247 F2d 42 (CA DC Cir) (1957):

". . . a prosecutor's words are not prejudicial error if the jury would understand from the context that they represent merely advocacy rather than *testimony*."

Viewed fairly, trial counsel's statement was nothing more than commentary on the record and was entirely proper unless he had an obligation to divulge to the court his knowledge that the victim was not a virgin. This brings me to my second point.

In Berger v United States, 295 US 78, 55 S Ct 629, 79 L ed 1314, the Supreme Court made this oft-quoted statement with regard to the duties of the prosecuting attorney:

". . . As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may

**317**

strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

In our early case of United States v Valencia, 1 USCMA 415, 4 CMR 7, we gave wholehearted support to this concept, and the underlying thought has been given expression in paragraph 44, Manual for Courts-Martial, United States, 1951, which prohibits trial counsel from "any act (such as the conscious suppression of evidence favorable to the defense) inconsistent with a genuine desire to have the whole truth revealed." In short, it may be said that trial counsel must act in fairness and good faith with regard to the interests of the accused.

The foregoing, however, does not place upon the prosecutor the burden of impeaching his own witnesses, briefing defense counsel on the evidence which is readily obtainable, assisting defense counsel in the preparation of his case, or advising defense counsel what evidence should be introduced. See United States v Sobell, 142 F Supp 515 (SD NY) (1956). A trial is an adversary proceeding and the essentially conflicting interests of opposing counsel must be considered. This thought was recognized by the Court of Appeals of Georgia in Scott v State, 53 Ga App 61, 185 SE 131, 135, when it cited the following language from 22 RCL 102:

". . . 'While the prosecuting officer should see that no unfair advantage is taken of the accused, yet he is not a judicial officer. Those who are required to exercise judicial functions in the case are the judge and jury. The public prosecutor is necessarily a partisan in the case. If he were compelled to proceed with the same circumspection as the judge and jury there would be an end to the conviction of criminals.' "

Trial counsel in the instant case had every reason to assume that defense counsel had obtained the information in question from the prosecutrix. La-

boring under this assumption, it cannot be said he consciously suppressed the evidence in question. Neither could he have known until the trial was over that the evidence would not be offered by the defense and, according to his affidavit, he was prepared to have the victim explain to the court why she had submitted to the acts of intercourse. He knew defense counsel was aware of the prosecutrix's relations with at least one individual and yet had not seen fit to use that fact in presentation of his case. Surely he was not compelled to assume defense counsel would consider other acts in a different light and advise him to change his theory of defense. Moreover, even were I to assume that trial counsel was aware of his opponent's oversight at the close of trial, I see no obligation on his part to halt the proceedings to aid the accused. He need not affirmatively help destroy the credibility of a witness for whom he is required to vouch, particularly when he is prepared to rehabilitate her veracity. That would require him to build a straw man to knock down. And it must be borne in mind he could not meet the innuendoes that she was a common woman of the street except by calling the court's attention to the lack of evidence to show she was unchaste. He, too, is bound by the record, and his prefatory phrase shows he was limiting his comment to the evidence before the court.

Lastly, it is to be remembered that the prior chastity of the victim was not determinative of the accused's guilt or innocence. Lack of virginity does not prove lack of veracity, and even a prostitute may tell the truth. Moreover, there may be little impairment of credibility when a young girl yields under a promise of marriage. Trial defense counsel knew and talked with the victim, he knew local social standards, he may have known of her explanation, and he was satisfied not to bring up specific acts. Certainly I am not in a position to say he made a bad choice. Nor can I say that three indiscretions, if accompanied by the explanation which trial counsel asserts the victim was prepared to make, would have had any adverse impact on her

credibility. At best, the impeachment evidence would have merely touched on one of those intangible factors of character and personality which, while subject to exploitation by either side during trial, was not of such nature that trial counsel must leak it to the defense or be charged with unethical or improper conduct. To hold thus would be to place upon him the burden of aiding the defense in the collection of evidence, its presentation to the court, and the impeachment of the Government's witnesses. If he is to be held to that standard, I wonder why an accused is furnished defense counsel.

For the reasons stated, I dissociate myself from the censure of trial counsel, but concur in the result reached by the Chief Judge. I also concur in denying the petition for new trial.

FERGUSON, Judge (dissenting):

I dissent. The opinion, by way of a footnote, indicates:

". . . [I]t would appear to be important that defense counsel be accorded an opportunity to examine the post-trial review."

I would state it more strongly. In my view, the post-trial review is an essential step in the judicial process, and defense counsel or the accused should in all cases be served with a copy of it.

Article 38(c), Uniform Code of Military Justice, 10 USC § 838, provides:

"In every court-martial proceeding, the defense counsel may, in the event of conviction, forward for attachment to the record of proceedings a brief of such matters as he feels should be considered in behalf of the accused on review, including any objection to the contents of the record which he considers appropriate."

Inasmuch as this Court has held that the staff judge advocate can commit error by what he includes or fails to include in his post-trial review, it is essential, in my opinion, that defense counsel be permitted to see a copy thereof before the convening authority takes his action. It seems to me this is the only possible conclusion if we are to give full effect to Article 38(c), supra.

Reference to the staff judge advocate review and to the action taken by the convening authority is also important to defense counsel's properly advising the accused as to his appellate rights, which includes the right to request counsel at the appellate proceeding. Cf. United States v Darring, 9 USCMA 651, 26 CMR 431, and paragraph 48j(3), Manual for Courts-Martial, United States, 1951.