No. 90-229

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA

    Plaintiff and Respondent,

  -vs-

LAWRENCE R. SHEPPARD,

    Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      William Boggs, Attorney at Law, Missoula, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General, Helena, Montana
Joseph Thaggard, Assistant Attorney General
Robert L. Deschamps, III, Missoula, Montana
Betty Wing, Deputy County Attorney

Submitted on Briefs: April 4, 1991

Decided: May 1, 1992

FILED

MAY 1 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Lawrence R. Sheppard appeals his conviction of sexual intercourse without consent, a felony, by a jury sitting in the District Court of the Fourth Judicial District, Missoula County. We affirm.

Sheppard presents the following issues on appeal:

1. Should Montana adopt the California rule that where the evidence clearly supports it, a lesser-included offense instruction must be given by the District Court sua sponte, even if not requested by the defense?

2. Did the District Court's failure to instruct the jury on the lesser-included offense of misdemeanor sexual assault deprive Sheppard of due process of law by denying him a fair trial?

In July 1989 Lawrence R. Sheppard and his wife moved from Florida to Missoula, Montana. When he arrived in Missoula, Sheppard went to Broughton's, a Missoula bar. There he met several people, including 16-year-old C.K. and Terri Beckstrom. C.K. was living with the Beckstrom family after having moved out of her parents' home. Testimony conflicted regarding lewd behavior of C.K. and others at the bar that evening.

After that initial meeting, Sheppard visited the Beckstrom household a few times and saw C.K. as one of a group of people there. Sheppard treated the group, including C.K., to lunch and on another occasion to ice cream.

On the evening before the alleged offense, Sheppard went out

drinking and stayed out all night. He testified that he came to the Beckstrom household on the morning of August 25, allowed Beckstrom and others to take his van for a shopping trip, and went to sleep in an upstairs bedroom.

C.K. testified that when she went into the bedroom to find a cigarette, Sheppard offered her $5 for a back rub. She gave him a back rub, and Sheppard paid her $4. C.K. said that Sheppard then offered her $50 to "make him feel good," and that she refused. C.K. stated that she thought this offer meant another back rub.

When Beckstrom and others returned to the house, Sheppard went out to his van. After a few minutes, one of Beckstrom's children told C.K. that Sheppard wanted to talk to her. C.K. went out to the van and got in. Sheppard offered to take her for a ride for an hour, just to get away from the house and to buy some pants for himself. Sheppard said that he again offered C.K. $50 to make him feel good. C.K. testified that Sheppard made no mention of the $50.

Sheppard drove the van to a ski area parking lot. Sheppard got out and climbed into the carpeted area in the back of the van. C.K. stayed in the front passenger seat for a few minutes and then, at Sheppard's request, brought him a beer. C.K. then joined Sheppard in the back of the van. She was seated with her legs folded under her and with her back up against the back of the van.

Sheppard began making sexual advances, touching C.K.'s leg, stomach, and breasts. Sheppard ran his hand between her legs and into her crotch area. C.K. stated that she told him several times

3

to stop. Sheppard testified that C.K. did not tell him to stop until he touched her vaginal area and when he was told to stop, he did. C.K. testified that Sheppard lifted her skirt up and put his hand inside her panties. Without removing her panties, he inserted his finger into her vagina and then penetrated her momentarily with his penis. Sheppard denied penetration in any manner.

Sheppard asked C.K. "if it was okay if he took care of himself," and masturbated on C.K.'s leg. Sheppard wiped off her leg with a Kleenex which he threw outside the van. The Kleenex was later found by police.

Both testified that Sheppard then drove to the KOA campground and let C.K. out. Sheppard stated that he told C.K. that he would be back with the $50. C.K. denied that Sheppard told her that. Sheppard did not return to pick her up, and C.K. tried to walk to a friend's house, but could not find it. After approximately an hour, she returned to the KOA store and called Beckstrom who sent a friend to give her a ride home. C.K. testified that she was very angry when the friend arrived, but that she did not talk to him about the rape because she did not know him very well.

When she returned to Beckstrom's, C.K. told Beckstrom about the alleged rape and the incident was reported to the authorities. When Sheppard was arrested by sheriff's officers that night, he denied any sexual contact with C.K. After Sheppard discovered that the Kleenex had been recovered, he gave a second statement saying that sexual contact occurred with C.K.'s consent, but that no penetration occurred.

4

Physical evidence was consistent with events as described by either C.K. or Sheppard. Semen was found on the recovered Kleenex. From vaginal smears of C.K., two sperm and three sperm heads were later found in laboratory examinations. Expert testimony indicated that the low number of sperm found could be associated with momentary penetration or from intercourse a few days prior to the laboratory tests.

Sheppard was charged with sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA (1989), and was convicted by a jury. The District Court sentenced Sheppard to the maximum twenty years in prison and enhanced the sentence another ten years because of Sheppard's prior criminal record. Fifteen years of the thirty-year sentence were suspended.

I.

Should Montana adopt the California rule that where the evidence clearly supports it, a lesser-included offense instruction must be given by the court sua sponte, even if not requested by the defense?

One matter in addition to the issues raised by the appellant requires discussion before we begin our analysis of those issues. The State asserts that this Court should decline to review the District Court's failure to give the lesser-included offense instruction sua sponte because of Sheppard's failure to request the instruction or object at trial. Sheppard asserts that § 46-20-701(2), MCA (1989), which places limits on appellate review where there has been no objection in the trial court, is inapplicable in

5

this case because any _sua_ _sponte_ action by a trial court by definition takes place without request or objection from trial counsel. We decline to consider the applicability of § 46-20-701(2), MCA (1989), to a trial court's duty to act _sua_ _sponte_.

To begin our analysis of the issues to be decided, Sheppard urges this Court to adopt the minority rule that a trial court has a duty to instruct the jury on a lesser-included offense, even absent a request for such an instruction. See, e.g., People v. Wickersham (Cal. 1982), 650 P.2d 311; State v. Coward (N.C. App. 1981), 283 S.E.2d 536. While conceding that this is a case of first impression in Montana, he argues that Montana statutory and case law both mandate this result.

Sheppard cites State v. Lundblade (1981), 191 Mont. 526, 625 P.2d 545 and § 46-16-401, MCA (1989), for the proposition that in Montana the trial judge has a duty to charge the jury on all essential questions of law, whether requested or not. Sheppard asks this Court to expand this duty by adopting the California rule compelling trial courts to instruct _sua_ _sponte_ if the evidence supports a conviction for a lesser-included offense. _Wickersham_, 650 P.2d at 320. The California Supreme Court based its policy requiring _sua_ _sponte_ instruction on a lesser-included offense on the following rationale: (1) a defendant has no right to an acquittal when the evidence is sufficient to convict him of a lesser-included offense; (2) the policy ensures that the verdict is neither harsher nor more lenient than the evidence merits; (3) the policy protects a defendant from poor representation by a lawyer

6

who is unaware of possible lesser-included offenses; and (4) the policy fully guards the right of the accused to complete instructions. Wickersham, 650 P.2d at 319-21.

We concede that a district court's failure to instruct the jury on essential questions of law can amount to error. See, e.g., State v. Williams (1979), 184 Mont. 111, 601 P.2d 1194. However, the general rule in Montana is that the court may instruct the jury sua sponte if evidence supports such an instruction. State v. DeMers (1988), 234 Mont. 273, 280-81, 762 P.2d 860, 864-65.

Further, the statute on which Sheppard relies denotes the trial court's permissive power, rather than a mandatory duty, to give the jury a lesser-included offense instruction sua sponte. Section 46-16-401(1), MCA (1989), provides that the district court may instruct the jury as to its duties by means of general instructions on that subject. In addition, § 46-16-401(4)(b), MCA (1989), refers to the court's role of settling the instructions "offered by counsel or proposed to be given to the jury by the court." (Emphasis added.) Conversely, § 46-16-401(4)(a), MCA (1989), clearly requires counsel to offer special instructions to the court if counsel desires such instructions to be given to the jury. While we agree that the trial court should instruct on all essential questions of law and may offer its own instructions, § 46-16-401, MCA (1989), does not expressly impose on the district court a duty to instruct the jury on questions of law not requested by counsel.

A lesser-included offense does not fall within the category of

7

an "essential" question of law because defense counsel may want to omit such an instruction as a matter of strategy. Montana recognizes that, upon request, a defendant is entitled to an instruction about a lesser-included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater. State v. Ostwald (1979), 180 Mont. 530, 538, 591 P.2d 646, 651. However, the rule in Montana and the overwhelming majority of states is that if a request for such an instruction is not made, the appellate court will not overturn the conviction absent plain error. State v. Evans (1991), 247 Mont. 218, 226, 806 P.2d 512, 517; see, e.g., State v. Lucas (Ariz. 1985), 708 P.2d 81; Robinson v. State (Ga. Ct. App. 1990), 390 S.E.2d 652; People v. Alvarez (Ill. App. Ct. 1989), 542 N.E.2d 737; Huntley v. State (Okla. Crim. App. 1988), 750 P.2d 1134.

The United States Supreme Court recognizes a defendant's right to a lesser-included offense jury instruction if requested, Keeble v. United States (1973), 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844, but has not ruled on whether courts must instruct the jury on lesser-included offenses sua sponte. Kubat v. Thieret (7th Cir. 1989), 867 F.2d 351, 365. Accordingly, federal courts will not consider a trial court's failure to instruct on lesser-included offenses without a contemporaneous objection unless the omission of the instruction constitutes plain error pursuant to Rule 52(b), Fed.R.Crim.P. See, e.g., United States v. Lopez Andino (1st Cir. 1987), 831 F.2d 1164, cert. denied, 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988); United States v. Vincent (5th Cir. 1981),

8

648 F.2d 1046. The reason usually given is that the trial court is not to interfere with strategy of defense counsel who may opt to omit a lesser-included offense instruction in order to force the jury to find the defendant guilty of the crime charged or acquit him. Kubat, 867 F.2d. at 365-66.

Some courts have held that a defendant not only has a right to lesser-included offense instructions on request, but also has a right to forego such instructions for strategic reasons. See Lopez Andino, 831 F.2d at 1171. In contrast, the California Supreme Court in Wickersham noted that the trial court must instruct sua sponte on lesser-included offenses, even when a defendant objects for tactical reasons. Wickersham, 650 P.2d at 324 n. 8 (citing People v. Sedeno (Cal. 1974), 518 P.2d 913). Not only does such a policy impinge on the advocate's role, but the result may be to unfairly surprise both the defense and the prosecution.

We conclude that under our adversarial system of justice, the prosecution and defense must have the option of foregoing a lesser charge instruction for strategic reasons. Lawyers, not judges, should try cases. Although the record does not enlighten us, both prosecution and defense counsel may have made a decision to force the jury to either convict or acquit of the offense charged without being given the opportunity to take the middle ground and convict of the lesser charge of misdemeanor sexual assault. Because mandatory sua sponte jury instruction on lesser offenses is inconsistent with Montana law and our public policy of allowing trial counsel to conduct the case according to his or her own

9

strategy, we decline to adopt the minority rule. The District Court did not err in failing to instruct the jury sua sponte on the lesser offense of misdemeanor sexual assault.

## II.

Did the District Court's failure to instruct the jury on the lesser-included offense of misdemeanor sexual assault deprive Sheppard of due process of law by denying him a fair trial?

The due process clause of the Fourteenth Amendment ensures a defendant's right to a fair and impartial trial, which "requires a factfinding process free of any impermissible extraneous influences on the trier of fact." Trujillo v. Sullivan (10th Cir. 1987), 815 F.2d 597, 601, cert. denied, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 246 (1987). Sheppard asserts that the District Court's failure in this case to instruct the jury sua sponte on the lesser-included offense of misdemeanor sexual assault violated his right to due process. In support of his argument, Sheppard cites In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, in which the Supreme Court held that the due process clause guarantees defendants the full benefit of the reasonable doubt standard. He also cites Beck v. Alabama (1980), 447 U.S. 625, 634, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392, 400, in which the Supreme Court stated that "[p]roviding the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." Sheppard apparently concludes that, in light of Winship and Beck, a lesser-included offense instruction is a right inherent in the

10

due process clause and that the trial court's giving of such an instruction sua sponte is included within that right.

Beck does not support the conclusions asserted by Sheppard. Beck involved a charge of capital murder. The defendant's own testimony established that he was guilty of felony murder, a noncapital lesser-included offense. The trial court refused defense counsel's requested lesser charge instruction in light of the Alabama statute prohibiting jury instruction on a lesser-included offense in a capital case. The jury convicted the defendant of the capital offense.

The Supreme Court struck down the Alabama statute. In holding that due process requires that a lesser-included offense instruction be given when the evidence warrants such an instruction, the Supreme Court stated:

> That safeguard [lesser-included offense instruction] would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense--but leaves some doubt with respect to an element that would justify conviction of a capital offense--the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated, there is a significant constitutional difference between the death penalty and lesser punishments. . . .

Beck, 447 U.S. at 637. Given the Beck Court's emphasis on the life and death nature of guilt determination in capital cases and "the significant constitutional difference between the death penalty and lesser punishments," the due process clause does not necessarily require lesser-included offense instructions in noncapital cases as

11

Sheppard maintains. Indeed, while praising the value of a lesser charge instruction as a means of strengthening the reasonable doubt standard, the Beck Court specifically declined to decide whether defendants have a due process right to such an instruction in noncapital cases. Beck, 447 U.S. at 638 n. 14.

The Supreme Court itself has stated that its decision in Beck was based on the Eighth Amendment. "Our holding in Beck, like our other Eighth Amendment decisions in the past decade, was concerned with insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided." Hopper v. Evans (1982), 456 U.S. 605, 611, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367, 373. Thus, it is possible that the Beck holding was based, not on the due process clause of the Fourteenth Amendment, but rather on a due process concept rooted in the Eighth Amendment prohibition against cruel and unusual punishment which requires a higher degree of procedural exactitude in capital cases to ensure that the death penalty is not imposed on the basis of caprice or emotion. Trujillo, 815 F.2d at 601. Consequently, "[a] majority of the circuits considering this difficult issue have held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question." Pitts v. Lockhart (8th Cir. 1990), 911 F.2d 109, 112, cert. denied, ___ U.S. ___, 111 S.Ct. 2896, 115 L.Ed.2d 1060 (1991); Trujillo, 815 F.2d at 602; see, e.g., Valles v. Lynaugh (5th Cir. 1988), 835 F.2d 126; Chavez v. Kerby (10th Cir. 1988), 848 F.2d 1101 (due process did not entitle defendant charged with

12

criminal penetration of child under thirteen to lesser-included offense involving sexual misconduct short of penetration); Perry v. Smith (11th Cir. 1987), 810 F.2d 1078.

Finally, it is important to remember that the defendant in Beck requested a lesser-included offense instruction at trial. The issue before the Supreme Court was whether in a capital case a state could statutorily preclude jury instruction on a lesser-included offense; the case did not involve whether the trial court should have given a lesser-included offense instruction sua sponte. At least one federal court has concluded that Beck does not require judges, as a matter of due process, to give lesser-included offense instructions sua sponte. Kubat, 867 F.2d 351. As the Kubat court observed, "[t]his [the Beck] holding is far from a rule requiring judges to sua sponte instruct the jury on lesser included offenses." Kubat, 867 F.2d at 365.

Sheppard also relies on the Ninth Circuit's decision in Bashor v. Risley (9th Cir. 1984), 730 F.2d 1228, cert. denied, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984), to support his contention that due process mandates sua sponte lesser-included offense instructions by trial courts. Specifically, Sheppard claims that in Bashor "the court adopted as a hypothesis that, in certain cases, a failure to give a lesser-included offense instruction could violate a defendant's due process rights, because it would contravene the rule--given constitutional status in the Ninth Circuit--that 'a jury must be instructed as to the defense theory of the case.'" Sheppard overlooks the limited nature of the Ninth

13

Circuit rule which requires the trial court to instruct the jury as to the defense theory of the case. This rule was adopted in United States v. Kenny (9th Cir. 1981), 645 F.2d 1323, cert. denied, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981), and pertains to a trial court's refusal to give jury instructions offered by a defendant. Kenny, 645 F.2d at 1337. Like Beck, Kenny does not address whether a due process violation occurs when the court fails to give such an instruction sua sponte. Accordingly, we hold that the District Court's failure to instruct the jury sua sponte on the lesser-included offense of misdemeanor sexual assault did not deprive Sheppard of his Fourteenth Amendment right to due process.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14