UNITED STATES, Appellee

v.

**Arlei O. GOMEZ, Staff Sergeant U.S. Army, Appellant.**

No. 96–1030.
Crim.App. No. 9400285.

U.S. Court of Appeals for the Armed Forces.

Argued Feb. 6, 1997.

Decided June 27, 1997.

For Appellant: *James A. Endicott, Jr.* (argued); *Captain John M. Head.*

For Appellee: *Major Virginia G. Beakes* (argued); *Colonel John M. Smith* and *Lieutenant Colonel Eva M. Novak* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During February and March 1994, appellant was tried by a general court-martial composed of officer and enlisted members at Fort Clayton, Panama. Contrary to his pleas, he was found guilty of assault with intent to commit rape, indecent assault, and communicating a threat, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement for 2 years, forfeiture of $800 per month for 24 months, and reduction to Private E–1. On November 1, 1994, the convening authority approved the adjudged sentence. On March 27, 1996, the Court of Criminal Appeals in an unpublished opinion set aside the findings of guilty to indecent assault on multiplicity grounds but affirmed the remaining findings of guilty and the sentence.

On October 3, 1996, this Court granted review of the following issue raised by appellate defense counsel and specified by the appellate court below:

WHETHER APPELLANT WAS PROPERLY CONVICTED OF ASSAULT WITH INTENT TO COMMIT RAPE UNDER ARTICLE 134 OF THE UCMJ, IN THAT THIS OFFENSE MAY HAVE BEEN PREEMPTED BY CONGRESS

THROUGH ENACTMENT OF ARTI-CLES 80 AND 120 OF THE UCMJ.

After consideration of the briefs and oral argument in this case, we find no preemption. *United States v. Hobbs*, 7 USCMA 693, 697–98, 23 CMR 157, 161–62 (1957); *United States v. Holman*, 3 USCMA 396, 399, 12 CMR 152, 155 (1953) (assault with intent to commit rape recognized as valid offense under Article 134); *see also Gray v. State*, 43 Md.App. 238, 403 A.2d 853, 856 (1979).

Appellant was charged with attempted rape (Art. 80); indecent assault (Art. 134); communicating a threat (Art. 134); and kidnapping (Art. 134). All these offenses allegedly occurred on June 8, 1993, with the same victim, Miss YLI, an 18–year–old Panamanian school girl. The alleged victim testified that appellant, a complete stranger, offered to give her a ride from the El Dorado Mall to her home around 7:00 p.m. on June 8, 1993. She testified that appellant drove by her house and continued on to Rain Forest Road. After he passed her house, appellant directed her to remove her clothing, put her head in his lap, and digitally penetrated her. She further testified that, after he stopped the car at the side of the highway, appellant unsuccessfully tried to penetrate her with his penis. She also said that appellant said he had a gun. Finally, she testified that the Panamanian National Police stopped at appellant's car at the side of the road, and that she ran to them and told them appellant tried to rape her.

Appellant testified in his own defense and denied any sexual acts with the alleged victim. He testified that he had borrowed his friend's 1993 Ford Explorer that day but experienced car problems. He testified that he initially tried to take the car to a dealership but decided to go home. He said that he saw Miss YLI waving for help at the intersection of Rain Forest Road and Transisthmian Highway. Being a "good samaritan," he stopped, and she asked for a ride to the canal zone. He agreed, but he said the car again broke down, and the Panamanian National Police drove up.

In his opening statement, defense counsel had summarized what appellant testified happened next:

> At that point his passenger, a strange girl who he had only met a few minutes before in a school uniform got out of the car, ran over to the police car, and he could hear her begin to cry. It didn't take him too long to start to piece together what was going on. The surprise turned to shock, then to horror. When the policeman came back, his suspicions were confirmed. This girl, whom he had shown his kindness, was accusing him of rape.

The members of appellant's court-martial found him not guilty of attempted rape as charged under Article 80, UCMJ, 10 USC § 880. Instead, they found him guilty of the lesser-included offense of assault with intent to commit rape, in violation of Article 134. The finding states that appellant did

> with intent to commit rape, commit an assault upon Miss [YLI] by putting his hand around her waist, squeezing her waist, inserting his finger into her vagina, laying on top of her and trying to insert his penis into her vagina.

He was also found guilty of indecent assault as originally charged. That specification states:

> SPECIFICATION: In that SSG Arlei O. Gomez, U.S. Army, did in the Republic of Panama, on or about 8 June 1993, commit an indecent assault upon Miss [YLI] a person not his wife by putting his hand around her waist, squeezing her waist, inserting his finger into her vagina, laying on top of her and trying to insert his penis into her vagina, with intent to gratify lust.

As noted above, the Court of Criminal Appeals set the latter finding of guilty aside as multiplicious with the assault with intent to commit rape.

— — —

■ Appellant attacks the legality of his conviction under Article 134 [1] for assault with

---

1. Article 134, Uniform Code of Military Justice, 10 USC § 934, states:

§ 934. Art. 134. General article

intent to commit rape[2] on the basis of the doctrine of preemption. Basically, he asserts that Congress intended a felonious assault (*i.e.*, an assault with intent to commit a felony such as rape) to be punished as an attempt under Article 80, not as a service discredit or disorder under Article 134. *See generally United States v. Weymouth*, 43 MJ 329, 338–39 (1995). He further notes that he was found not guilty of attempted rape under Article 80.[3] Accordingly, he argues that his conviction for assault with intent to commit rape must be set aside because it is based on unauthorized presidential legislation. *See generally United States v. Hemingway*, 36 MJ 349, 351 (CMA 1993). We disagree.

In addressing this issue, we initially note that Article of War (AW) 93 (1950) stated:

> **ART. 93. Various Crimes.**—*Any person subject to military law who commits* manslaughter, mayhem, arson, burglary, housebreaking, robbery, larceny, perjury, forgery, sodomy, *assault with intent to commit any felony,* assault with intent to do bodily harm with a dangerous weapon, instrument, or other thing, or assault with intent to do bodily harm, *shall be punished as a court-martial may direct: Provided,* that any person subject to military law who commits larceny or embezzlement shall be guilty of larceny within the meaning of this article.

(Emphasis added.)

The Manual for Courts–Martial, United States Army, 1949, explained that an assault with intent to commit rape under AW 93 was "an attempt to commit" that felony. However, it further explained that an attempt to commit rape might also consist of other acts not amounting to an assault. It stated:

> ***Assault with intent to commit rape.***— *This is an attempt to commit rape* in which the overt act amounts to an assault upon the woman intended to be ravished. *Indecent advances, solicitations however earnest, mere threats; and actual attempts to rape wherein the overt act is not an assault do not amount to this offense.* Thus, where a man, intending to rape a woman, stealthily concealed himself in her room to await a favorable opportunity to execute his design but was discovered and fled, he was not guilty of an assault with intent to commit rape.

---

Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

2. Paragraph 64, Part IV, Manual for Courts–Martial, United States, 1984, states:

> **64. Article 134—(Assault—with intent to commit murder, voluntary manslaughter, rape, robbery, sodomy, arson, burglary, or housebreaking)**
> a. *Text. See* paragraph 60.
> b. Elements.
>   (1) That the accused assaulted a certain person;
>   (2) That, at the time of the assault, the accused intended to kill (as required for murder or voluntary manslaughter) or intended to commit rape, robbery, sodomy, arson, burglary, or housebreaking; and
>   (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
> c. *Explanation.*
>   *(1) In general.* An assault with intent to commit any of the offenses mentioned above is not necessarily the equivalent of an attempt to commit the intended offense, for an assault can be committed with intent to commit an offense without achieving that proximity to consummation of an intended offense which is essential to an attempt. See paragraph 4.
>
>              *    *    *
>
>   *(4) Assault with intent to commit rape.* In assault with intent to commit rape, the accused must have intended to overcome any resistance by force, and to complete the offense. Any lesser intent will not suffice. No actual touching is necessary, but indecent advances and importunities, however earnest, not accompanied by such an intent, do not constitute this offense, nor do mere preparations to rape not amounting to an assault. Once an assault with intent to commit rape is made, it is no defense that the accused voluntarily desisted.

3. This court-martial found appellant not guilty of attempted rape only after being instructed by the judge, without defense objection, that assault with intent to commit rape was a lesser-included-offense of attempted rape.

No actual touching is necessary. When a man entered a woman's room and got in the bed where she was and within reach of her person for the purpose of raping her he committed the offense under discussion, although he did not touch the woman.

The intent to have carnal knowledge of the woman assaulted by force and without her consent must exist and concur with the assault. In other words, the man must intend to overcome any resistance by force, actual or constructive, and penetrate the person of the woman. Any less intent will not suffice.

Once an assault with intent to commit rape is made, it is no defense that the man voluntarily desisted.

Para. 180k, Manual, *supra* at 246–47 (emphasis added).

In 1950, the Uniform Code of Military Justice was enacted to replace the Articles of War. No codal provision was enacted which expressly prohibited assault with intent to commit a felony or assault with intent to commit rape. Article 120, UCMJ, 10 USC § 920, prohibited the crime of rape and Article 80 prohibited any attempt to commit an offense under the Code. Article 128, UCMJ, 10 USC § 928, prohibited assaults of various types but not specifically felonious assault. As enacted in 1950, it stated:

**ART. 128. Assault.**

(a) Any person subject to this code who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of assault and shall be punished as a court-martial may direct.

(b) Any person subject to this code who—

(1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;

is guilty of aggravated assault and shall be punished as a court-martial may direct.

The legislative history supporting this codal provision further stated:

*References.*—A. W. 93; N.C. and B., section 48.

*Commentary.*—This article is divided into two categories. Subdivision (a) defines a simple assault. Subdivision (b) sets forth the elements of aggravated assault.

*This article differs from present service practice in that assaults with intent to commit specific crimes have been eliminated. Such assaults could be punished under Article 80 (attempts), or, if the intent is doubtful, under this article.*

Hearings on H.R. 2498 Before a Subcomm. Of the House Armed Services Comm., 81st Cong., 1st Sess. 1234 (1950) (emphasis added).

Appellant's preemption claim is based primarily on the above legislative deletion and comments of the drafters of the Code. His argument is somewhat unusual in that he does not contend that Congress intended this type of conduct to go unpunished. Compare *United States v. Norris,* 2 USCMA 236, 8 CMR 36 (1953) (Court found charged conduct not intended by Congress to be criminal), with *United States v. Kick,* 7 MJ 82 (CMA 1979) (Court found charged conduct intended by Congress to be criminal). Instead, he argues that Congress intended that such conduct only be punished as an attempted rape under Article 80. Final Brief at 9. This type of misdesignation claim is normally rejected on harmless-error grounds because a servicemember could have been found guilty of the same offense under another codal provision. Art. 59(a), UCMJ, 10 USC § 859(a); see *United States v. McCormick,* 12 USCMA 26, 30 CMR 26 (1960); *United States v. Deller,* 3 USCMA 409, 12 CMR 165 (1953). However, since appellant was found not guilty of attempted rape under Article 80, this approach is not available in this case.

Turning directly to appellant's argument of preemption, we initially note that it rests on a purported inference as to congressional intent drawn from the above legislative sources. He contends that the above legislative activity by Congress is a clear indication

of its intent to eliminate assault with intent to commit a felony as a specific military criminal offense under any other provision of the Code except Article 80. Admittedly, the legislative history of Article 128, noted above, is troublesome. *See Weymouth,* 43 MJ at 338–39. However, we conclude that the plain language of Article 134, its contemporaneous implementation by the President, and our early and consistent decisions approving this offense under Article 134 dictate a contrary conclusion.

The question of preemption is one that is not new to the military justice system. *See United States v. Deller* and *United States v. Norris,* both *supra.* We have applied this particular doctrine in the context of assaults both to permit and not to permit prosecutions for special types of assaults under Article 134. *See United States v. Toutges,* 13 USCMA 425, 32 CMR 425 (1963) (assault on officer not in execution of office is offense under Article 134); *cf. United States v. McCormick, supra* (assault and battery on child under 16 not an offense under Article 134). Nevertheless, we have never held that Article 80 preempts the field of assaults with intent to commit a felony. *Cf. Weymouth, supra* at 340 (issue of preemption not before us); *see generally United States v. Woodson,* 3 USCMA 372, 375, 12 CMR 128, 131 (1953) ("We further believe Congress concluded that Articles 128 *and 134* of the Code carved out all the necessary graduations of assault. . . ." (Emphasis added.)). In sum, we have not generally ignored the plain words of Article 134 ("Though not specifically mentioned in this chapter . . . ."), which permit its use to charge crimes not specifically delineated in the Uniform Code of Military Justice.

On the contrary, long ago this Court recognized and approved the offense of assault with intent to commit rape under Article 134. *United States v. Morgan,* 8 USCMA 341, 344, 24 CMR 151, 154 (1957); *Hobbs,* 7 USCMA at 697–98, 23 CMR at 161–62; *Holman,* 3 USCMA at 398, 12 CMR at 154; *see also United States v. Floyd,* 2 USCMA 183, 186, 7 CMR 59, 62 (1953) (Court recognizes assault with intent to commit murder as crime under Article 134). Moreover, during the past 45 years, we have affirmed findings of guilty to assault with intent to commit rape under Article 134 in numerous cases. *E.g., United States v. Wilson,* 18 MJ 204 (CMA 1984); *United States v. Schoenberg,* 16 USCMA 425, 37 CMR 45 (1966); *United States v. Beatty,* 10 USCMA 311, 27 CMR 385 (1959); *United States v. Freeman,* 4 USCMA 76, 79, 15 CMR 76, 79 (1954); *United States v. Wycliff,* 3 USCMA 38, 11 CMR 38 (1953); *United States v. Bartholomew,* 1 USCMA 307, 309, 3 CMR 41, 43 (1952). Finally, our recognition of this particular criminal offense under Article 134 reflects our approval of the President's view that it is a permissible way to charge an assault with intent to commit a felony.[4] *See generally* J. Snedeker, *Military Justice Under The Uniform Code* 825, 903–04 (1953); *see also Gray v. State,* 43 Md.App.

---

**4.** The Manual drafters apparently felt that the express language of Article 134 on when to charge offenses under that codal article took precedence over advisory comments in the legislative history of Article 128, UCMJ, 10 USC § 928. *See United States v. Curry,* 35 MJ 359, 361 (CMA 1992). They expressed their view on congressional intent on this charging-procedure question as follows:

> The Morgan Committee noted that Article 128, Assault, differed from present service practice in that assaults with intent to commit specific crimes were omitted from that Article, and said, "Such assaults could be punished under Article 80 (Attempts), or, if the intent is doubtful, under this Article." *The general article by its very terms, however, covers all offenses "not specifically mentioned" in the code, and it was deemed advisable to set forth the elements*

> *of some of these particular assaults which are made with intent to commit some of the more serious crimes.*
>
> Legal and Legislative Basis, Manual for Courts–Martial, United States, 1951 at 297 (emphasis added).

They also expressed their view on the substantive scope of these offenses as follows:

> For a discussion of the distinction between an assault with intent to commit a specific crime and an attempt to do so, *see United States v. Barnaby,* 51 Fed 20; *Cirul v. State,* 83 Tex. Cr. 8, 200 S.W. 1088. An example of the distinction between the two was suggested by General Green (Hearings before the Senate Subcommittee, p. 277): "A person can assault another (*e.g.,* a watchman) with intent to commit a felony (e.g., a housebreaking) without having gone far enough with respect to the intended felony to constitute an attempt to

238, 403 A.2d 853, 856 (1979); *Christensen v. State*, 33 Md.App. 635, 365 A.2d 562, 565 (1976).[5]

In this light, we are persuaded that appellant's conviction for assault with intent to commit rape under Article 134 should be affirmed on the basis of the doctrine of *stare decisis*. See generally *Payne v. Tennessee*, 501 U.S. 808, 827–29, 111 S.Ct. 2597, 2609–10, 115 L.Ed.2d 720 (1991) ("[a]dhering to precedent 'is usually the wise policy' "). We did not reject our prior case law on felonious assaults in *Weymouth*, 43 MJ 329, where we said:

> [W]e hold *only* that, based on the plain meaning of the statutes and the legislative history, Congress authorized an offense of attempted murder and, at a minimum, did not expect servicemembers to be *charged with both attempted murder and assault with intent to murder, arising out of the same act.*

*Id.* at 340 (emphasis added). Moreover, we conclude that our earlier case law is neither unworkable nor badly reasoned, nor has it been repudiated by Congress in over 45 years. *Cf. Payne v. Tennessee, supra.* In these circumstances, adherence to past precedent is not only permissible, but appropri-

ate as well. *Cf. United States v. Clardy*, 13 MJ 308, 315–16 (CMA 1982) (overruling *United States v. Ginyard*, 16 USCMA 512, 37 CMR 132 (1967), because intervening expression of legislative intent warranted decision not to follow doctrine of *stare decisis* ).

■ As a postscript, we note that the military judge in this case, *sua sponte*, instructed the members that assault with intent to commit rape under Article 134 was a lesser-included offense of the charged offense of attempted rape under Article 80. *See generally Hobbs*, 7 USCMA at 697–98, 23 CMR at 161–62; *see also United States v. Strachan*, 35 MJ 362, 364 (CMA 1992). An argument could have been made that this assault offense is not a necessarily included offense of attempted rape as defined in *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). *Compare United States v. McGill*, 964 F.2d 222, 239–40 (3d Cir.1992) (claim that judge erroneously gave lesser-included-offense instruction), *with United States v. Brittain*, 41 F.3d 1409, 1416 (10th Cir.1994) (claim that judge erroneously failed to give lesser-included-offense instruction). However, such an argument was not made in this case, and we need not decide that issue today. *See United States v. John-*

---

commit it." For example, the watchman might be at such a distance from the warehouse that the overt act could be held no more than mere preparation to commit the offense. *See* paragraph 159.

Conversely, certain facts may establish an attempt but not an assault. For example, under subparagraph (c) of this paragraph, a man is said not to be guilty of an assault with intent to commit rape where he conceals himself in a woman's room to await a favorable opportunity to execute his intent to rape her, but is discovered and escapes. Those facts appear to establish a violation of Article 80, Attempts, as defined in paragraph 159. See Wharton's Criminal Law, (12th Edition), page 305.

Legal and Legislative Basis, *supra* at 296–97 (emphasis added); *but see United States v. Weymouth*, 43 MJ 329, 339 (1995).

**5.** The following was stated in *Gray v. State*, 43 Md.App. 238, 403 A.2d 853, 856 (1979):

> For inchoate, not fully-consummated crime, society has long had available in its arsenal both the statutory offense of "assault with intent to ..." and the common law offense of

criminal attempt. Although these two offenses have a significant overlap, they are nonetheless distinct and each addresses certain pockets of inchoate criminal activity not covered by the other. [5]

---

[5] For an analysis of the similarities and the difference, *see* the excellent discussion by Chief Judge Gilbert in *Christensen v. State, supra. Christensen v. State*, 33 Md.App. 635, 365 A.2d 562, 565 (1976), states:

> We think it clear from an examination of the elements of assault with intent to rape and attempted rape that, while the purpose to engage in illicit coitus is attendant in each offense, the crimes are different. If an attempt to commit a rape proceeds to a degree whereby it is tantamount to an assault upon the victim, the offense becomes the felony of assault with intent to rape, but if the attempt to rape falls short of an assault, the offense remains a common law misdemeanor. *Burton, v. State*, 8 Ala.App. 295, 62 So. 394 (1913). *See also Taff v. State*, 69 Tex.Crim. 528, 155 S.W. 214 (1913).

*son,* 42 MJ 443, 446 (1995); *see generally Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

In appellant's case, defense counsel on two occasions indicated that he had no objections to a lesser-included-offense instruction on assault with intent to commit rape. *See* RCM 920(f), Manual for Courts–Martial, United States, 1984; *see also United States v. Lopez Andino,* 831 F.3d 1164, 1171–72 (1st Cir. 1987); *State v. Keffer,* 860 P.2d 1118, 1137 (Wyo.1993); *State v. Sheppard,* 253 Mont. 118, 832 P.2d 370, 373 (1992) (general rule of waiver of error in lesser-included-offense instructions absent objection). Moreover, in view of military law at the time of this trial as represented by this Court's decision in *United States v. Hobbs, supra,* assault with intent to commit rape was considered a lesser-included-offense of attempted rape, and appellant had ample notice to be called to defend on this charge. *See Fransaw v. Ly-naugh,* 810 F.2d 518, 529 (5th Cir.1987); *State v. Milardo,* 224 Conn. 397, 618 A.2d 1347, 1356–58 (1993). Finally, this Court did not apply *Schmuck v. United States, supra,* in this particular context until after appellant's court-martial (*United States v. Schoolfield,* 40 MJ 132, 137 (1994), and *United States v. Foster,* 40 MJ 140, 146 (1994)), and we have done so employing the "rational derivative" analysis *suggested* in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). In these circumstances, no plain error occurred, so further consideration of the above-noted issue is not warranted. *See also Weymouth,* 43 MJ at 340 (Congress did not intend that servicemembers be charged and found guilty of attempted murder and assault with intent to commit murder arising out of the same act.).

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.